**Tony N. TRYON, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 4741.**

Supreme Court of Wyoming.

Aug. 5, 1977.

Gary P. Hartman, Greybull, for appellant.

V. Frank Mendicino, Atty. Gen., and Ernest Keene ·Bard, County Atty., Hot Springs County, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

GUTHRIE, Chief Justice.

Appellant was convicted of first degree rape by a jury in Hot Springs County, and was sentenced to a term of not less than 15 nor more than 30 years in the Wyoming State Penitentiary. He appeals this conviction and sentence. He bases his claim for reversal upon three propositions:

1. That there is insufficient evidence to support the verdict of first degree rape.
2. That the trial court erred when it instructed the jury to acquit the defendant or find him guilty of first degree rape.
3. That a communication to a juror by way of an anonymous telephone call was so prejudicial as to require reversal.

We find no basis for reversal.

## SUFFICIENCY OF THE EVIDENCE

Appellant asserts that the State failed to prove that the intercourse was forcible and against the will of the prosecutrix, although he denies any such occurrence. The question of whether there was resistance or consent is clearly a jury question, *Kennedy v. State*, Wyo., 470 P.2d 372, 373, rehearing denied, Wyo., 474 P.2d 127, certiorari denied, 401 U.S. 939, 91 S.Ct. 933, 28 L.Ed.2d 218. In our consideration of this question we reiterate our well-established rule that when faced with a question of this character our duty is to determine if there is sufficient evidence without consideration of conflicting evidence of the defendant, giving to the State every favorable inference arising therefrom, *Evanson v. State*, Wyo., 546 P.2d 412, 418; *Horn v. State*, Wyo., 554 P.2d 1141, 1145.

At the time of this incident prosecutrix was 12 years old, weighed approximately 98 pounds, and was nearly five feet tall. Defendant was a man of 30 years, weighed approximately 180 pounds, and was described as "stocky and muscular." The evidence reveals that during the evening he had consumed several drinks. There is a clear showing that the complaining witness had had intercourse, as evidenced by the presence of motile sperm in the vagina when she was examined early in the morning of the incident.

This child had been baby-sitting for Marilyn Roberts, the woman with whom defendant lived, and upon their return to the trailer at approximately 2:30 or 3:00 a. m. defendant was to drive her to her home, which was approximately one block away. However, when she got into the car defendant asked if he couldn't drive by the Ritz to see if two of his friends were there. When he discovered they were not there, he told prosecutrix he was going up on the hill to see if they might be up there fighting. Defendant drove up on the hill, and finding no one there proceeded on toward Cody on the highway. When he got to the west end of the so-called "Cody Loop," which is apparently an older, abandoned portion of the highway several miles from town, he drove off the road and parked some distance from any habitation and out of sight of lights. After some conversation about whether she had ever had intercourse and advising her that her mother and Marilyn had asked that he explain this to her, he told her he was going to show her. He thereupon pulled her over by the arm onto the console and pushed her into the back seat. She then sat in the back seat with her legs drawn up and her knees against her chest, holding them with her arms. He got into the back seat and told her to lie down, which she refused to do. He then pushed her over and told her to let her legs down, which she did not do, and when she refused to do this he pushed her hands away from her legs and

sat on them. He told her to pull down her slacks and her panties, and when she refused he told her if she wouldn't, he would. She then pulled them both down because she was frightened. He forced her legs apart and got his body in between. He then told her he was only going to rub his penis on her stomach, although he forced it into her while she was crying and whimpering and telling him she did not want to do this. Defendant had undressed during this period. Prosecutrix stated she resisted "a little bit but not as hard as she could," saying she was scared to do more. During this activity she told him it hurt and she was whimpering.

Appellant places reliance upon certain excerpts from the prosecutrix's testimony wherein she said that he did not threaten her although she said she was afraid, and when she said she did not think she was resisting him at all. We note, however, that this last reference is apparently to what she was doing with her hands after he had spread her legs apart and worked his body between her legs. Defendant further made much of the fact that she had no apparent scratches or bruises and the fact that she herself pulled down her slacks and panties.

This lack-of-resistance contention is an unusual position in light of defendant's complete denial of having intercourse with this girl. It would appear that the only question that must be resolved is whether the State made a prima facie case or whether there was any competent testimony upon which the verdict could be based, because we cannot disturb this verdict if there is competent evidence to sustain it.

Appellant places much reliance upon *Gonzales v. State*, Wyo., 516 P.2d 592, contending that this case is directly in point and urging that the record shows a complete lack of fear or reasonable apprehension on the part of the prosecutrix. It appears necessary to mention that *Gonzales* is not a case decided upon the lack of or insufficiency of the evidence to convict, but upon the application by the trial court of a wrong standard in determining defendant's guilt.

An examination of *Gonzales* will reveal certain general principles applicable hereto, however. The lessons therefrom are that resistance is not always necessary to establish lack of consent where such resistance would be futile or where the female is overcome by superior strength or paralyzed by fear. Acquiescence is not consent if induced by fear or reasonable apprehension of severe bodily harm.

■ From this record, considering the complete disparity in physical strength, age, maturity, and the overt physical acts of defendant, it is not hard to agree that there is a basis for a finding that she was overcome by superior strength and reasonable fear and apprehension of severe bodily harm.

■ We find here a child afraid of the dark, alone with this defendant several miles from her home, very late at night—and with a man whom she knew had been drinking and quarreling with the woman for whom she had been baby-sitting. We cannot help but suggest that all of these elements could totally terrify a child of tender years, or that the jury could have so reasonably inferred. The reasonableness of her apprehension or fear is a matter for a jury's determination because it is inherently a question of fact, *People v. Yannucci*, 283 N.Y. 546, 29 N.E.2d 185, 186; *State v. Baker*, 30 Wash.2d 601, 192 P.2d 839, 842. The standard of resistance in rape cases is a relative one, i. e., a victim is not required to do more than her age, strength, surrounding facts, and all attending circumstances make it reasonable for her to do in order to manifest opposition, *Mills v. United States*, 164 U.S. 644, 648, 17 S.Ct. 210, 41 L.Ed. 584; *State v. Risen*, 192 Or. 557, 235 P.2d 764; *Haury v. State*, Okl.Cr.App., 533 P.2d 991, 995–996; *Dinkens v. State*, Nev., 546 P.2d 228, 230; *State v. Hannon*, 104 Ariz. 273, 451 P.2d 602; *People v. Flores*, 62 Cal. App.2d 700, 145 P.2d 318, 320; *State v. Gray*, Mo.App., 497 S.W.2d 545; *Willingham v. State*, 201 Ga. 339, 39 S.E.2d 751.

■ Although the defendant did not express threats, wielded no weapons, and did

not strike the victim, the force applied when considered in light of the facts previously related is sufficient to support the jury's finding of non-consent. Submission and consent are two different concepts. While consent necessarily involves submission, submission does not always involve consent, *State v. Cross*, 12 Iowa 66, 70, 77 Am.Dec. 519; *State v. Carter*, 265 N.C. 626, 144 S.E.2d 826, 829–830.

We also find some significance in the fact that this older man kept this child from her home for a period of approximately two hours, that the woman with whom he was living had made inquiries, and that the mother of the child had reported this to the authorities. A friend of the family had gone looking for them and immediately when this child drove up in front of her home—where her mother was standing— she complained that the defendant had raped her.

There was sufficient evidence to sustain this verdict.

## INSTRUCTIONAL ERROR

The basis of the contention made in this court is that by reason of the failure to instruct on second degree rape the court invaded the province of the jury. This instruction would have involved determining whether the prosecutrix consented. The brief of appellant does not rely upon plain error, nor is any argument made that this was plain error, so we can only properly consider this upon the basis of the record. The record shows no such instruction was offered, nor was any objection made to the failure to instruct the jury on second degree rape. If defendant chose to rely upon an "all or nothing at all" stance at that time, this is then a trial tactic with which he must now live.

■ We cannot consider this proposition because it was not preserved for review by the failure to make such objection, *Moore v. State*, Wyo., 542 P.2d 109, 112, and cases

cited therein; *Hampton v. State*, Wyo., 558 P.2d 504, 507, and authorities cited.

## PREJUDICIAL COMMUNICATION WITH THE JURY

■ This is based upon an incident occurring during the trial. Mrs. Wallingford, a juror, reported to the sheriff she had received an anonymous telephone call and that the caller tried to give her information about the defendant, suggesting he had committed other similar acts. The trial judge, in his chambers and outside the presence of the jury but in the presence of counsel, questioned her about this incident. The judge inquired if she could disregard this and she replied she felt she could. She further replied she did not believe it would have any bearing on her verdict at all and agreed she would not mention it to the other jurors. There is no showing that any other juror was called.

At the conclusion of his inquiry the judge asked defendant's counsel if he had anything further, and he replied he had nothing. When they returned to the presence of the jury the judge made a general inquiry of the jurors as to whether they had received any telephone calls mentioning the case, and when there was no response the trial judge again asked defendant's counsel if he was satisfied with the instruction to the jury, to which he replied in the affirmative. There was no motion for mistrial and no objection on the part of the defendant to proceeding. We must infer he was satisfied with this procedure and admonition, *Oldham v. State*, Wyo., 534 P.2d 107, 111, and *Gallup v. State*, Wyo., 559 P.2d 1024, 1026, so he cannot now be heard to complain. This court does not favorably view claims based upon briefcase error, *Gallup v. State*, supra.

As the trial judge participated in and observed this incident, he was in a much better position than this court is to determine whether the defendant was preju-

diced. After making thorough inquiries of the juror involved, the judge obviously concluded that an admonition to the juror and the entire jury would avert prejudicial error. This was clearly within his discretion, and there is nothing which indicates any abuse thereof. The record indicates no resultant harm to the defendant. To now find that the curative action taken was insufficient, and the judge's estimation of the problem erroneous, would be sheer speculation, *Gallup v. State*, supra, at 1026; *State v. Spears*, 76 Wyo. 82, 300 P.2d 551, 560.

Judgment affirmed.