Gordon C. SNYDER, Appellant (Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 5081.

Supreme Court of Wyoming.

Aug. 24, 1979.

Robert W. Koester and Keith G. Kautz, Sheridan, signed the brief and Koester appeared in oral argument on behalf of appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Gay V. Bartels, signed the brief of appellee. Richard Scott Rideout, Asst. Atty. Gen., Cheyenne, appeared in oral argument on its behalf.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

The appellant-defendant challenges his conviction for aggravated assault and battery.[1] The issues presented are: (1) under the instructions given the jury, the evidence is insufficient to sustain his conviction; (2) the district court did not properly have jurisdiction of the case, because the justice of the peace who conducted appellant's preliminary hearing and bound him over to the district court for trial did not have evidence before him which established Sheridan County, Wyoming, as the place where the crime was committed; and (3) photographs of the assault and battery victim which depicted the injuries to his face and head were admitted without proper foundation.

We will affirm.

On January 16, 1978, at about 10:00 p. m., the appellant and two other individuals, Dale W. Selig and Randy Chitwood,[2] were riding around in a pickup on Main Street in Sheridan. Chitwood was the owner and driver of the pickup. Selig was seated between Chitwood and appellant. The victim of the assault and battery Jerry Eugene Carbone, was also driving a pickup on Main Street and was proceeding from the Veteran's Administration Hospital near Sheridan to his home. The testimony at trial demonstrated that just prior to the assault both pickups were proceeding south on Main Street. The vehicles became positioned so that they were side-by-side somewhere in the vicinity of the Sheridan Center Motor Hotel. The street was icy and rutted. Carbone testified that he was driving cautiously because of those conditions. He saw the Chitwood pickup coming and noticed that he, " * * * wasn't driving as cautiously

---

1. The information filed against appellant on March 21, 1978, charged violation of § 6–70(A), W.S.1957, 1975 Cum.Supp. At that time, the 1957 statutes had been superseded by the 1977 republished edition of the Wyoming statutes. § 6–70(A) was renumbered, but in identical language, as § 6–4–506(a), W.S.1977:

   "(a) If any person shall unlawfully and maliciously inflict upon another person, any grievous bodily harm the person so offending shall be fined not more than one thousand dollars ($1,000.00) or be confined in the county jail not more than one (1) years, or both."

2. Both Selig and Chitwood were charged as codefendants. Selig was tried jointly with appellant and was acquitted by the jury. Chitwood skipped bond and was apparently in Utah at the time of trial. Thus, Chitwood's guilt or innocence in this matter is yet unresolved.

as he could be, * * * and so I slowed up and let him go beyond me. * * * " Carbone passed the Chitwood vehicle at the Dow Street traffic light. As the two vehicles approached Alger Street, Carbone testified:

" * * * I saw him coming up in the rear-view mirror, and there was a large truck parked on the right, and I knew I was going to be very close and that he was going to kind of squeeze me in, so I slowed way down, and as he went by, his mirror ticked mine, knocked mine forward, and then he proceeded on to Grinnell [Street] and stopped. * * * "

Carbone further testified that when he reached Grinnell Street he rolled down his window intending to ask the driver of the pickup if his mirror had been damaged. Carbone related that as he approached the Chitwood pickup he heard the yelling and screaming of foul language. Carbone identified the appellant and Selig as being passengers in that pickup. When Carbone stopped his vehicle at the Grinnell-Main Streets intersection, the vehicles were about 3–4 feet apart. Carbone testified that Snyder said to him: "You're going to pay for that mirror, you so and so." After hearing more foul language from the appellant and his companions, Carbone responded: " * * * I told him to go to hell, that I wasn't going to pay anything."

Carbone then related that the appellant jumped out of the Chitwood vehicle and took a swing at him. Carbone grabbed the appellant by the hair and held his head down against the door of the Carbone vehicle so that appellant was unable to strike him. Carbone testified that appellant did not strike him at any time. Chitwood then existed his vehicle, entered Carbone's pickup through the passenger door, and struck several blows to Carbone's head and face. Meanwhile, Selig also got out of the Chitwood pickup and was attempting to free appellant from Carbone's grasp. Carbone stated that Selig was reaching over appellant, whose head Carbone still had pinned against the door of his pickup, trying to strike Carbone and that he did hit him at least once.[3] Carbone also testified that throughout the confrontation appellant was clawing at the arm with which Carbone held him. After a couple of minutes, the attacked ceased and the appellant, along with his companions, retreated. Carbone then drove directly to the police station to report the incident. The appellant and his companions followed Carbone warning him that he had better not go to the police station. Nevertheless, he did. The appellant and his companions also went to the police station and at one point in the police station the appellant and Carbone had to be separated by a police officer because the conflagration appeared to be heating up again when appellant took a swing at Carbone.

The appellant maintains that the evidence proved that appellant never actually struck Carbone and further that the jury actually found that he did not act in concert with Selig and Chitwood to produce the injuries suffered by Carbone. Therefore, under the instructions given to the jury, the evidence will not sustain the finding of guilt. This contention appellant premises upon Instruction Number 11:

"You are intructed [sic] that if you find that David W. Selig, Gordon C. Snyder, and Randy G. Chitwood, acted together or in concert and that they did, on the 16th day of January, 1978, unlawfully and maliciously inflict upon Jerry Eugene Carbone grievous bodily harm, and that said act was commited [sic] in Sheridan County, State of Wyoming, then, and in that event, your verdict must be *that both David W. Selig and Gordon C. Snyder are guilty* of the crime charged, that of aggravated assault and battery without a dangerous or deadly weapon." (Emphasis added.)

Appellant imagines and urges that because the jury acquitted Selig they made an

---

**3.** Selig denied ever striking Carbone and claimed to be only a peacemaker in that he was trying to break up the fight between appellant and Carbone. The jury apparently believed this since he was acquitted.

implicit finding that there was no concerted action.[4] And further, that there were no other instructions given that could enable the jury to find appellant guilty under a "concerted-actions" or accomplice theory. We do not agree.

Instruction Number 12 was of assistance to the jury in this regard:

"In this case, you must decide separately the question of the innocence or guilt of each of the two defendants. If you cannot agree upon the innocence or guilt of both the defendants, but do agree as to the innocence or guilt of one of them, you must render a verdict as to the one upon whose innocence or guilt you do agree."

Appellant would narrowly read Instruction 11 so that if the jury were to find the appellant guilty under a concert-of-action theory, then Selig would also have to have been found guilty. This narrow reading of Instruction 11 and the other instructions given is not supported by reason or authority.

■ We hold that reading together these two instructions, along with others, the jury could properly find the appellant guilty and at the same time acquit Selig. All instructions given must be read together. *Cullin v. State,* Wyo.1977, 565 P.2d 445; *Hoskins v. State,* Wyo.1976, 552 P.2d 342, rehearing denied 553 P.2d 1390, certiorari denied 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806. The evidence, set forth in detail, was sufficient to sustain a finding that Carbone was attacked by the appellant and Chitwood, especially when viewed, as we must, in a light most favorable to the State. *Nisonger v. State,* Wyo.1978, 581 P.2d 1094.

The inference drawn by the appellant from the acquittal of Selig under Instruction Number 11 that the jury found no concerted action and erred in not following the instruction to also acquit appellant has no more basis than does the inference that the jury found concerted action and erred in not following the instruction to also convict Selig. In recognition that the jury was properly bound to consider the instructions as a whole, we do not accept either inference of error, but conclude that the jury found concerted action by the first aggressor, appellant, and by the second aggressor, Chitwood.

■ It is immaterial that Chitwood was not present for the trial. He was still a part of a joint attack on Carbone. When two persons aid and abet each other in an assault on another, each is responsible for the acts of the other. The jury could properly infer from the evidence that the appellant and Chitwood acted together and thus each was accountable for the other's acts. *Coca v. State,* Wyo.1967, 423 P.2d 382, 386–387; *Lujan v. State,* Wyo.1967, 423 P.2d 388, 390–391; see, *Cooper v. State,* Okl.Cr. 1978, 584 P.2d 234, 238. We view Instruction 11 to have adequately informed the jury of the governing law of accomplices or concerted action. Further, while the instruction is not a model of clarity,[5] when read together with the other instructions, especially Instruction 12, the jury could properly have concluded from the evidence that appellant and Chitwood acted together and that Selig was not a part of that joint effort. See *State v. Joyner,* N.C.1979, 255 S.E.2d 390, 396; *State v. Easton,* Mo.App. 1979, 577 S.W.2d 953; *State v. Finch,* 1977, 293 N.C. 132, 235 S.E.2d 819, 827; *Pulliam v. State,* 1976, 264 Ind. 381, 345 N.E.2d 229, 238.

■ If the instructions were not as clear as appellant would have liked them to be, then he should have objected and offered instructions which he considered to be clear under the circumstances of this case. Instead, appellant did not object or offer any more adequate instructions but apparently

---

4. We agree with appellant that there is not evidence to sustain a finding that appellant himself, independently, inflicted grievous bodily harm to Carbone, but he did join in the attack.

5. See Wyoming Pattern Jury Instructions—Criminal, § 3.205 (1978).

"A person aids and abets the commission of a crime if he knowingly and with criminal intent aids, promotes, encourages, or instigates the commission by act or advice."

chose to lie in wait and challenge the instructions for the first time on appeal. That, he cannot do. He must bear the responsibility for his choice. Failure to object to an instruction to the trial court precludes the defendant from so objecting on appeal. The trial court first must have an opportunity to pass on the matter. *Daellenbach v. State,* Wyo.1977, 562 P.2d 679; *Ballinger v. State,* Wyo.1968, 437 P.2d 305; West's Wyoming Digest, ▮▮▮▮▮▮▮

▮▮▮ Appellant's other two issues will require only brief consideration. Appellant asserts there was no evidence presented to the justice of the peace at the preliminary hearing to prove the crime was committed in Sheridan County, Wyoming. The purpose of a preliminary hearing is to determine if there is sufficient competent evidence from which the justice of the peace or magistrate can conclude that there is probable cause that a crime has been committed and the defendant committed it. Rule 7(b), W.R.Cr.P.; 22 C.J.S. Criminal Law § 345; see generally, West's Digest System, Criminal Law, ▮▮▮▮▮ 238(2), and 238(5). Here the record of the preliminary hearing is peppered with references to well-known landmarks and streets—e. g., Sheridan Center, Main, Dow, Alger, and Grinnell Streets—and Sheridan, Wyoming is mentioned. The only thing lacking is the full-blown statement that the events took place in Sheridan County. There was sufficient evidence from which the justice of the peace could reasonably infer that the alleged crime took place in Sheridan County. 23 C.J.S. Criminal Law §§ 914b and 914d.

▮▮▮ Finally appellant asserts that a photograph was not properly admitted into evidence. The State introduced several photographs of Mr. Carbone taken at the police station right after the assault which depicted the extent of his fresh-appearing facial injuries. Appellant asserts that the State failed to demonstrate that the pictures represented a changed condition in that there was no direct testimony that appellant looked any different after the assault than before. In addition to its subliminal quali-

ties, this issue was in no way called to the attention of the trial court by objection, and we will note consider it on appeal. *Hampton v. State,* Wyo.1977, 558 P.2d 504.

Affirmed.