**Lonnie Eugene WILSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 5732.**

Supreme Court of Wyoming.

Dec. 30, 1982.

Sylvia Lee Hackl, Appellate Counsel, Cheyenne, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Laramie, and Michael A. Blonigen, student intern (argued), for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Allen C. Johnson, Sr. Asst. Atty. Gen., and Michael L. Hubbard, Asst. Atty. Gen. (argued), for appellee.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

This is the last of the appeals taken by the defendants charged with sexual assault and associated crimes upon a somewhat deaf and retarded victim in a Cheyenne park.[1] Appellant in this appeal was found guilty by a jury of sexual assault in the second degree in violation of § 6–4–303, W.S.1977, aiding and abetting first degree forcible sexual assault in violation of §§ 6–1–114 and 6–4–302(a)(i), W.S.1977, and aiding and abetting an attempted first degree forcible sexual assault in violation of § 6–1–201, W.S.1977, Cum.Supp.1982, and §§ 6–1–114, and 6–4–302(a)(i), W.S.1977. He was remanded to the state penitentiary to serve concurrent sentences on each of the counts for which he was found guilty; as an ultimate result, he received not less than five nor more than eight years.

In this appeal he raises as issues:

1. "Whether the use of solely hearsay information to support a finding of probable cause at the preliminary hearing resulted in substantial prejudice to appellant's right to effective counsel."

2. "Whether the instruction on consent allowed the jury to convict the appellant of a crime he had not been charged with and of which he had no notice."

We will affirm.

The victim of the sexual assaults by her three assailants was not present to testify at the preliminary hearing held following the filing of criminal complaints arising out of the multiple attacks made upon her. The assaults took place on October 21, 1981, the criminal complaints were filed on October 23, 1981, and the preliminary hearing was held on October 29, 1981.

The preliminary hearing was conducted as to all three defendants, including appellant. The defendants, including appellant, objected to the preliminary hearing going ahead without the presence and testimony of the victim and moved for a continuance so that she could be subpoenaed for their cross-examination. The prosecuting attorney explained her absence in response to the motion:

"In any event, Your Honor, the victim in this case is a woman who has a learning disability, who has impaired speech, who wears a hearing aid and has seriously impaired hearing acuity. As a result of this incident, where she was slapped on the ears, her hearing aid in her right ear, as I recall, injured the inner ear where at this time she is in pain to where she can't wear her hearing aid. She would be available if this court insisted that she appear, but the rules do not contemplate nor require that she appear. It's not in the best interest of this victim. And we are also here to protect the victim and her interests, as well as to protect the interest of these accused, and to protect the interests of the people of this state.

"So, what I am saying is, Your Honor, we really should go forward at this time, as the state contemplates, and that will be, as we represent to the court, on the hearsay testimony, within the rules of evidence of this court."

The objection was overruled and the motion denied.

The State produced two witnesses to establish probable cause. A deputy sheriff, who had participated in the investigation of the sexual assaults and who was present at the time the victim was first interviewed by a female officer of the sheriff's department, testified as to the product of his investigation. The female officer—communications supervisor—of the sheriff's department testified as to the results of her interview of the victim.

The sheriff's deputy, at the interview, obtained from the victim a description of the vehicle in which she was placed when abducted. It was a green, two door automobile with a cracked windshield, the radio removed from the dash, crumpled newspapers and a blue jacket on the floor, seat belt on the driver's side missing, a red baby seat

1. See, *Haight v. State,* Wyo., 654 P.2d 1232 (1982) and *Evans v. State,* Wyo., 653 P.2d 308 (1982).

in the rear, a half-gallon size bottle on the floor, and other identifying features. She described two of her three attackers as black, named Willie and Mike, and the other as white with a pony tail.

The testimony disclosed that one of the attackers had removed a ring which she had made from her finger and had taken off her hearing aids. A ring, answering the description given by the victim, was recovered by search warrant from the appellant's room. The deputy observed red welts and a bruise on the victim's neck and that she was upset and appeared frightened while being interviewed. When the witness saw her later, her bruises were "starting to raise real good." Armed with the descriptions given, a vehicle and occupants answering the description were picked up. It was, upon examination by the witness, found to be a green, two door automobile with cracked windshield, the radio removed from the dash, crumpled newspapers and blue jacket on the floor, seat belt on the driver's side missing, a red baby seat in the rear seat, a half gallon liquor bottle on the floor, and had the other features described by the victim.[2] The officer further testified that the occupants of the described vehicle when apprehended were one black and one white, named Michael Evans and Mark Haight, respectively. The officer witness testified that the victim was reluctant to discuss the sexual acts with males in the room, so he left and the interview continued in the presence of the female officers.

The victim later, in the presence of the witness, identified the appellant in a six man photo lineup, as the one referred to as Willie. His photo had been selected because it matched the description of one of her attackers which the victim had given the witness. His wallet was also found in the seized vehicle.

The second witness, Linda Selby, of the Sheriff's office, interviewed the victim. She described her appearance as very tired, her eyes puffy from crying, and withdrawn but "jumpy." There was a mark on her neck. The victim's statement to this witness was that upon returning to her home from a Safeway store,[3] she noticed a green car with two black males in it following her. As she went around to the back of the house, and as she was chaining up her dog, the two black males got out of the car in the alley near her. One of them grabbed her by the hair and threw her into the back seat of the car and they drove off. They used the names Willie and Mike. Willie picked up from his sister a key to her apartment in Sun Valley, a subdivision of Cheyenne, drove there and went in, where Mike took off her clothes and on the bedroom floor he sexually assaulted her by inserting "his penis into her uterus [sic]." After that, appellant's sister returned to the apartment, whereupon appellant, Evans, and the victim left. They then picked up a white friend, Haight, the one with the pony tail, and drove to Lions Park in northwest Cheyenne where they parked. While there a police car drove by. The victim was pushed down in the back seat out of sight when she tried to yell for help.

The witness went on to testify that the victim related that after that appellant got into the back seat and took his turn at sexually assaulting the victim, as had Evans, by inserting "his penis into her uterus [sic]." It was then that appellant took off her hearing aids and threw one outside the car. The victim was yelling at the time, and appellant threatened to hit her if she did not shut up. After an unsuccessful attempt by Haight to compel oral sex with her by pushing her face down on his penis, she was let off at a local Mini Mart, where the Cheyenne police department was called.

The foregoing witness also pointed out the appellant in the county courtroom as the same person whom the victim identified as Willie at the photo lineup. At the same time the witness identified, in a similar manner, the other defendants. Officer Sel-

---

2. An officer witness called by counsel for one of the defendants testified that he stopped the car and that all these items were in the vehicle.

3. At the trial, the store was identified as Saveway in south Cheyenne.

by also testified she was with the victim when they followed the route which the victim described as the one taken during the course of the evening of sexual episodes.

After hearing the testimony just summarized, the county judge found probable cause and the appellant, along with the other defendants, was bound over to the district court.

## I

The use of hearsay testimony to establish probable cause at a preliminary hearing is practically a universally approved practice. In Wyoming the basic authorization appears in Rule 7(b), W.R.Cr.P.:

"If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the commissioner shall forthwith hold him to answer in district court. *The finding of probable cause may be based upon hearsay evidence in whole or in part.* The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. Objections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary examination. Motions to suppress must be made to the trial court as provided in Rule 16 and Rule 40(e)." (Emphasis added.)

This court has had little occasion to, in disposition of an issue raised on appeal, approve the use of hearsay evidence for the purpose of establishing probable cause at a preliminary hearing. It has apparently more or less been taken for granted, particularly in light of the explicit language of Rule 7(b), supra. In dealing with another question, this court in *Weddle v. State,* Wyo., 621 P.2d 231 (1980), said in passing

that "[t]he value of cross-examination at a preliminary hearing is questionable inasmuch as hearsay evidence is admissible, and cross-examination on hearsay evidence is almost impossible." In a case related to the one now before us, *Haight v. State,* supra fn. 1, the question was treated to some extent in connection with Haight's claim that he was denied the constitutional right of effective assistance of counsel by the absence of the complaining witness at the preliminary hearing and was denied a continuance in order to subpoena her. We, there, only made reference to Rule 7(b), supra, as authorizing hearsay evidence as a basis for finding probable cause.

Prior to the advent of the adoption of the Rules of Criminal Procedure in 1968, effective February 11, 1969, no preliminary hearing was required if an information was filed in the district court within 30 days before the first day of the regular term of court or within 30 days thereafter if the defendant could be tried during that term. Section 7–124, W.S.1957 (C.S.1945, § 10–607). That statutory section was superseded by Rule 7, supra. During that earlier period, this court held that the right to a preliminary hearing was statutory, was not a constitutional nor a substantial right unless an accused was prejudiced as a matter of demonstrable reality. *State v. Spears,* 76 Wyo. 82, 300 P.2d 551 (1956). However, since that time, *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), has been decided and holds that the Fourth Amendment[4] requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest, though it may be informal and non-adversarial, but is not required where there is a grand jury indictment. This court agreed in *Hurst v. State,* Wyo., 563 P.2d 232 (1977), that the preliminary hearing is a critical stage of the state's criminal process.[5]

4. The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

5. We note a misprint in the text of *Hurst.* The court is citing and quoting from *Coleman v. Alabama,* 399 U.S. 1, 10, 90 S.Ct. 1999, 2003, 26 L.Ed.2d 387 (1970). It was said in *Hurst* that

The provision of Rule 7(b), supra, dealing with use of hearsay evidence, came about by way of amendment of Rule 7 on May 17, 1978, effective August 22, 1978. The amendment was prompted by amendment of the Federal Rules of Criminal Procedure to add Rule 5.1(a), F.R.Cr.P., in identical language in pertinent part. The Advisory Committee note to this rule, amongst other comments to be later herein set out, says in part:

"A grand jury indictment may properly be based upon hearsay evidence. *Costello v. United States*, 350 U.S. 359 [76 S.Ct. 406, 100 L.Ed. 397] (1956); 8 J. Moore, Federal Practice ¶ 6.03[2] (2d ed. Cipes, 1970, Supp.1971). This being so, there is practical advantage in making the evidentiary requirements for the preliminary examination as flexible as they are for the grand jury. Otherwise there will be increased pressure upon United States Attorneys to abandon the preliminary examination in favor of the grand jury indictment. See C. Wright, Federal Practice and Procedure: Criminal § 80 at p. 143 (1969). * * * "

While use of the grand jury in Wyoming is not as extensively followed as in federal criminal procedure, it nevertheless is available and has been used. Article 1, §§ 9 and 13, Wyoming Constitution; § 7–5–101, et seq., W.S.1977; Rules 7(a) and 9, W.R.Cr.P.[6]

In *Costello v. United States,* supra, it was observed that if the evidence before the grand jury was subject to testing on the ground of inadequacy or incompetence, the resulting delay would be great in that it would result in a kind of a preliminary trial to make such a determination. The court went on to observe that in a trial on the merits, a defendant is entitled to a strict observance of all the rules required in criminal practice to bring about a fair verdict but to compel such a standard at the grand jury level would add nothing to the assurance of a fair trial.

■ To impose the same rules of evidence at the preliminary hearing stage as at the trial stage would amount to the granting of a second trial and this would be judicial waste and delay. A preliminary hearing is not designed to be a dress rehearsal for the trial. Its only purpose is to determine whether there is a sound basis for continuing to hold the accused in custody, to make sure that he is not being held on some capricious or nebulous charge.

■ Probable cause exists if the proof is sufficient to cause a person of ordinary caution or prudence to conscientiously entertain a reasonable belief that a public offense has been committed in which the accused participated. *Henning v. Miller,* 44 Wyo. 114, 8 P.2d 825 (1932); *McIntosh v. Wales,* 21 Wyo. 397, 413, 134 P. 274, 278 (1913). See also, *Drury v. Burr,* 107 Ariz. 124, 483 P.2d 539 (1971) where the term "reasonable suspicion" in lieu of "reasonable belief" was used. In *People v. Uhlemann,* 108 Cal.Rptr. 657, 9 Cal.3d 662, 511 P.2d 609 (1973) and *Graves v. Sheriff, Clark County,* 88 Nev. 436, 498 P.2d 1324 (1972), the courts use the term "strong suspicion" rather than "reasonable suspicion." "Reasonable belief" is the Wyoming standard; "beyond a reasonable doubt" is not the measure.

There do not appear to have been many cases decided under Rule 5.1(a), F.R.Cr.P., with respect to the phrase "hearsay evidence in whole or in part." In *U.S. v. Wilkins,* 422 F.Supp. 1371, aff'd *Appeal of Smith,* 547 F.2d 1164 (3rd Cir.1976) and 547 F.2d 1166 (3rd Cir.1976), aff'd 559 F.2d 1210 (3rd Cir.1977), vacated 441 U.S. 468, 99 S.Ct. 1829, 60 L.Ed.2d 365, aff'd 601 F.2d 577 (3rd Cir.1979) and *Appeal of Wilkins,* 601 F.2d 578 (3rd Cir.1979), cert. denied 444 U.S. 877,

---

"[t]he preliminary hearing 'is *not* a "critical stage" * * *.' " *Coleman* does not say it is "not" a critical stage. *Coleman* says it *is* a critical stage.

6. Rule 7(a), W.R.Cr.P.: "In all cases triable in district court, except upon indictment, the defendant shall be entitled to a preliminary examination. * * * " There are also other criminal rules pertaining to prosecution by indictment.

100 S.Ct. 163, 62 L.Ed.2d 106 (1976),[7] the court held that the defendant could be held on the basis of hearsay evidence alone and had no right to have the prosecutrix appear at such hearing. Hawaii has a rule permitting a finding of probable cause based in whole or in part on hearsay evidence. In *Gannett Pacific Corp. v. Richardson*, 59 Hawaii 224, 580 P.2d 49 (1978), existence of the rule was cited as an example by the court in expressing itself to the effect that a preliminary hearing finding of probable cause may be made upon evidence inadmissible at trial but nonetheless admissible at the preliminary hearing.

We must understand what rules of court are. The Supreme Court of the United States is authorized by Congress to promulgate rules of criminal procedure and report them to Congress. Title 18, U.S.C. §§ 3771 and 3772. Rule 5.1, F.R.Cr.P., was adopted by the Supreme Court of the United States by its order of April 24, 1972 and transmitted to Congress. Federal Rules, Crim.Proc., West pp. 9–10 (1981). The further aim of Rule 5.1(a), other than what we have already set out, is expanded upon in Advisory Committee notes addressed to the Supreme Court of the United States:

> "Subdivision (a) makes clear that a finding of probable cause may be based on 'hearsay evidence in whole or in part.' The propriety of relying upon hearsay at the preliminary examination has been a matter of some uncertainty in the federal system. See C. Wright, Federal Practice and Procedure: Criminal § 80 (1969, Supp.1971); 8 J. Moore, Federal Practice ¶ 504[4] (2d ed. Cipes 1970, Supp.1971); *Washington v. Clemmer*, 339 F.2d 715, 719 (D.C.Cir.1964); *Washington v. Clemmer*, 339 F.2d 725, 728 (D.C.Cir.1964); *Ross v. Sirica*, 380 F.2d 557, 565 (D.C.Cir. 1967); *Howard v. United States*, 389 F.2d 287, 292 (D.C.Cir.1967); Weinberg and Weinberg, The Congressional Invitation to Avoid the Preliminary Hearing: An Analysis of Section 303 of the Federal Magistrates Act of 1968, 67 Mich.L.Rev.

1361, especially n. 92 at 1383 (1969); D. Wright, The Rules of Evidence Applicable to Hearings in Probable Cause, 37 Conn.B.J. 561 (1963); Comment, Preliminary Examination—Evidence and Due Process, 15 Kan.L.Rev. 374, 379–381 (1967)." Footnote to Rule 5.1, F.R.Cr.P., 18 U.S.C.A., F.R.Cr.P., p. 250.

Adoption of the rule by the Supreme Court of the United States must be an approval of such reasons.

The Wyoming Supreme Court is authorized by the Wyoming Legislature to adopt rules of procedure though they cannot abridge, enlarge, nor modify substantive rights of any person. Sections 5–2–113 and 5–2–114, W.S.1977. The Wyoming Rules of Criminal Procedure were adopted by this court pursuant to that authority. Rule 7(b), W.R.Cr.P., was adopted by this court for the same reasons that the Supreme Court of the United States adopted Rule 5.1(a), F.R. Cr.P.—to settle the question as to whether probable cause could be established by hearsay evidence in whole or in part.

▮ It is well recognized in this jurisdiction that the supreme court has the inherent right to prescribe rules being limited only by their reasonableness and conformity to constitutional and legislative enactments. *Petersen v. State*, Wyo., 594 P.2d 978 (1979); *State ex rel. Frederick v. District Court of Fifth Judicial Dist. In and For County of Big Horn*, Wyo., 399 P.2d 583, 12 A.L.R.3d 1 (1965). There is no statutory law in conflict with Rule 7(b). No substantive right is involved in the light of the approval given by the Supreme Court of the United States. We see no constitutional proscription, nor is a constitutional question raised by appellant. The rules pertaining to preliminary hearings are framed around the rights to which a person charged with a crime is entitled. The rule with respect to hearsay evidence is constitutionally acceptable and fits within the purpose intended for the availability of a preliminary hearing.

---

**7.** After the basic citation, the circuit court three times affirmed without opinion. The Supreme Court's vacation was to afford the defendant an opportunity to petition for certiorari which it then denied.

The proper and orderly administration of justice requires reasonable adherence to rules. *Zier v. City of Powell,* Wyo., 526 P.2d 63 (1974), and they should not be relaxed or changed at the whim of this or any other court. *Mayland v. State,* Wyo., 568 P.2d 897 (1977). As long as counsel stays within the prescribed rules and professionally, energetically and skillfully devotes himself to the interests of his client, and performs such legal services as would reasonably be rendered by a reasonably competent attorney under the facts and circumstances of the case, the client is receiving effective assistance of counsel. *Hoskovek v. State,* Wyo., 629 P.2d 1366 (1981). Effective assistance of counsel does not mean nor require the unfettered freedom to go off in every which direction and require different rules than those prescribed by this court. It is reasonable for counsel to accept and function within the rules promulgated by this court.

The only purpose of a preliminary hearing is to determine if probable cause exists to believe that an offense has been committed and that the defendant charged has committed it. *Snyder v. State,* Wyo., 599 P.2d 1338 (1979). It is in no sense a trial. The finding of probable cause determines only the propriety of a trial, complete in every way with every protection that the constitution, laws, and decisions of this state have been able to develop and it does not place the accused in jeopardy. There is no constitutional mandate to turn a preliminary hearing into a full trial where all defenses are presented, affirmative and otherwise, in order to thereby secure a complete dismissal of charges. *Thomas v. Justice Court of Washakie Cty.,* Wyo., 538 P.2d 42 (1975). It is not the purpose of the preliminary hearing to establish guilt. While some discovery results as a by-product of the preliminary hearing, that also is not its purpose. *Weddle v. State,* supra.

We take time to point out that all the evidence at the preliminary hearing here was not hearsay. There is direct evidence that the victim complained to law enforcement officers of the sexual assault.

There is direct evidence of the presence of red marks and a bruise about the victim's neck. There is direct evidence of the victim's distraught state. There is direct evidence in corroboration of her hearsay description of the vehicle in which she was transported by her assailants, in that a vehicle answering her description was found; that a photo lineup held in the presence of the preliminary hearing witness, at which the victim selected the photo of appellant as one of her criminal attackers, and the witness pointed him and the others out in the courtroom. Additionally, other officers were called by the defendants for cross-examination who were present during interviews of the victim and verified that the statements she made were as testified to by the witnesses produced by the State. There was a fully developed collection of evidence that would lead a person or ordinary caution or prudence to entertain a reasonable belief that crimes had been committed, that appellant participated, and that he should be held for trial.

The wise Learned Hand said in *United States v. Garsson,* 291 F. 646, 649 (D.C.S.D. N.Y.1923):

"* * * Under our criminal procedure the accused has every advantage. While the prosecution is held rigidly to the charge, he need not disclose the barest outline of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least fair doubt in the minds of any one of the twelve. Why in addition he should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see. No doubt grand juries err and indictments are calamities to honest men, but we must work with human beings and we can correct such errors only at too large a price. Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. What we need to fear is the archaic formalism and the watery senti-

ment that obstructs, delays, and defeats the prosecution of crime."

What was said then is just as perceptive today and applies to preliminary hearings, if not more so. Discovery allowed by the Wyoming Rules of Criminal Procedure after the prosecution is in the district court furnishes an ample opportunity for trial preparation.

## II

Appellant's second issue raises an issue somewhat difficult to understand and may be no more than sophistry. He has a view that the trial court's instruction on consent allowed the jury to convict the appellant of a crime not charged and of which he had no notice.

Defendant's counsel offered this proposed instruction on consent:

"Consent by the person allegedly assaulted is a defense to the charge of sexual assault in the first degree. The defense of consent requires that [the victim] voluntarily consented by words or conduct to sexual intercourse.

"The State has the burden to prove beyond a reasonable doubt that there was not consent by [the victim]."

The trial judge used this pattern jury instruction, 9.601, W.P.J.I.Cr.:

"Consent by the person assaulted is a defense to the charges. The defense of consent involves two separate elements:

"1. That [the victim] did voluntarily consent to the act by word or conduct; and

"2. That [the victim] had the present ability to consent or the defendant could not reasonably have known that [the victim] lacked the present ability to consent.

"Submission alone may not be consent.

"The state has the burden to prove beyond a reasonable doubt that there was not consent by [the victim]."

Appellant, upon being bound over to the district court, was charged by information with first degree sexual assault by " * * * sexual penetration and sexual intrusion on a female victim by causing submission of said female victim by the actual application,

reasonably calculated to cause submission of the victim, of physical force and forcible confinement, contrary to W.S. § 6–4–302(a)(i), 1977 Republished Edition. * * * " In addition, appellant was charged with aiding and abetting Michael Evans to commit the same crime and aiding and abetting Mark Haight to attempt to commit the same crime.

Section 6–4–302(a), W.S.1977, provides:

"(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:

"(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement; or

"(ii) The actor causes submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats; or

"(iii) The victim is physically helpless, and the actor knows or should reasonably know the victim is physically helpless and the victim has not consented; [or]

"(iv) The actor knows or should reasonably know that the victim through a mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct." (There is no subsection (b)).

The trial judge, within the evidence, additionally instructed the jury on the elements of the crime of sexual assault in the second degree:

"The necessary elements of the crime of sexual assault in the second degree are:

"1. The crime occurred within the county of Laramie on or about the date of October 21, 1981; and

"2. The defendant inflicted sexual penetration or sexual intrusion on [the victim]; and

"3. The defendant caused submission of [the victim] by any means that would

prevent resistance by a person of ordinary resolution.

"If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonalbe [sic] doubt, then you should find the defendant not guilty of sexual assault in the second degree.

"If, on the other hand, you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty of sexual assault in the second degree."

Section 6–4–303(a), W.S.1977, in pertinent part provides:

"(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituted sexual assault in the first degree:

\* \* \* \* \* \*

"(ii) The actor causes submission of the victim by any means that would prevent resistance by a victim of ordinary resolution."

The appellant was found guilty of sexual assault in the second degree, guilty of aiding and abetting Evans in the crime of first degree sexual assault, and aiding and abetting Haight in attempted sexual assault in the first degree. While the crimes charged are referred to by comparatively recent legislation, ch. 70, Session Laws of Wyoming, 1977, as "sexual assaults," they are a redesignation of the crime of "rape," carried into the act with supplemental provisions representing enlightened views, clarification, and definitions intended to prevent abusive defense practices.

While appearing somewhat repetitious of what was disclosed at the preliminary hearing, a narrative of the evidence produced at the trial is essential to disposition of appellant's second issue. The victim's testimony was that she had been to the store for groceries and, upon return to her home, went into the backyard. The appellant and Mike drove up, grabbed her by the hair, and forced her against her will into their car.

After a visit to the appellant's sister's apartment, the appellant and Mike picked up another friend, Haight, and, with the victim in the car, drove to a Cheyenne park near a lake and parked. There, Mike and Willie took off her clothes. She screamed and yelled, appellant squeezed her around the neck until it was bruised, but nevertheless appellant put his penis into her vagina as did Mike. After that, appellant did it again. Haight, who had been outside the car, got into the back seat, grabbed her by the back of the head, and attempted to put his penis into her mouth; but she resisted so much, he was unable to do so. She continued to keep yelling and was threatened that if she did not stop, they would throw her clothes into the lake. After having been put through this series of sexual incidents, she was permitted to put her clothes on and was then driven to a Mini Mart in Cheyenne. She was in pain, doubled over because her stomach was hurting, but ran inside and told the clerk she had been kidnapped and raped.

The clerk of that Mini Mart testified, through deposition, that between 10:00 and 10:15 at night the victim came in, bent over, holding her stomach, her face pale and covered with red splotches as though she had been crying, and her hair was a mess. She said she had been raped and grabbed hold of the clerk's hand, would not let go, and was frightened and shaking. The victim asked for help and to be hidden because "they" were coming back. She could hardly stand.

The clerk called the Cheyenne police. The officer responding to the call testified that the victim appeared in pain, had red marks and bruising around the neck. She was placed in the police vehicle. Enroute to the hospital, he was able to obtain some descriptive information about her assailants and their vehicle.

At the hospital a female police officer, having been earlier called, was there. The nurse on duty testified to the digital type bruises on the victim's neck, the scratches on her right shoulder and an abrasion on her lower left abdomen; the victim was

tearful, frightened, and in pain. The nurse testified that the victim had a great deal of trauma around the cervix—extremely red and oozing blood. The vaginal portion was very swollen.

The examining physician at the hospital testified as to his examination of the victim. She had the bruises and other marks, as well as injury to her uterus, cervix and vagina. A sexual assault "kit" was utilized. Swabs, used to collect specimens from the vaginal vault, were later tested.[8] The doctor testified that his examination disclosed a forcible entry into the patient, having the appearance of an assault. He testified that normal sex with a woman the size of the patient would not cause the pain, the large areas of ecchymosis (oozing blood) and contusions.

All of this evidence could easily convince the jury beyond a reasonable doubt that the sexual assault was by the application of physical force and that it was reasonably calculated to cause submission of the victim and constitute forcible sexual assault in the first degree. While appellant was himself found guilty of a second degree sexual assault, he was also found guilty of aiding and abetting first degree sexual assault.

The evidence will also sustain second degree sexual assault charged under § 6–4–303(a)(ii), W.S.1977, in that appellant caused "submission of the victim by any means that would prevent resistance by a victim of ordinary resolution." The appellant admitted the sexual intercourse, but defended on the ground that the victim consented.

The question here is probably improperly phrased by the appellant. Sexual assault in the first degree, § 6–4–302, supra, has four alternatives. Appellant was charged under (a)(i), which is founded on force, reasonably calculated to cause submission; (a)(ii) is founded on submission brought about by threats; (a)(iii) covers sexual penetration upon a physically helpless person. Physically helpless is explained under definitions, § 6–4–301(a)(iii) to mean "unconscious, asleep or otherwise physically unable to communicate unwillingness to act." Subsection (a)(iv) is directed to the accused who knows that because of a mental disability or developmental disability the victim is incapable of giving consent. The evidence does not support any of (a)(ii) through (a)(iv).

There is evidence produced through the testimony of a psychologist who had seen the victim on several occasions, as late as January 1982.[9] She testified that the victim had two disabilities. She had been hard of hearing all her life which resulted in missed information because teaching is so much by oral communication. The victim is also mentally retarded and, even though a mature woman of 22 years, her understanding and ability to reason was less than that of an eleven year old child. Because of that condition she was more vulnerable, fearful and had a great deal of anxiety.

In addition, the testimony of an audiologist was received, with the same limiting instruction, fn. 9, supra. This witness had worked with the victim over the years. She concluded that though the victim could not hear everything that was said, even with amplification, she functioned "fairly well" with hearing aids. A special hearing device was explained by which the victim could be and was interrogated in the courtroom; it was a F.M. transmitter with microphone and receiver with headphones.

---

**8.** Tests disclosed that male spermatozoa found came from a person having type O blood. Appellant had type O blood. The swabs showed the presence of gonorrhea; appellant had gonorrhea.

**9.** The trial judge, before receiving the testimony of this witness, specifically instructed the jury that it would

"* * * assist you as trier of the facts in understanding the evidence, if you under-

stand the background and the disabilities, if any, of [the victim] who will testify later. "I should caution you, and I do caution you, that this is not to be taken as in any way attempting to bolster the credibility of [the victim's] testimony, or, on the other hand, to detract from the credibility. You are not to consider it in that light at all, but only as a means of helping you understand better the evidence when you receive the testimony of [the victim]."

It is the observation of this court that the transcript of the victim's testimony discloses that it would not appear that she is a physically helpless person, nor so mentally deficient that she was incapable of giving consent. Her testimony showed that she did not give consent and yelled in protest. Her testimony was sometimes out of sequence, but the longer she testified the more intelligible it became. The jury could well have believed she was not physically helpless or mentally deficient to the extent of being incapable of giving consent.

It is significant that appellant was not charged with sexual assault upon a physically helpless or mentally deficient person within the purview of § 6-4-302(a)(iii) or (iv), supra. The court's instruction on consent as a defense did not contemplate that it be within the scope of those charges not brought under (a)(iii) or (iv). Though the victim had a serious hearing impairment, it did not render her incapable or physically helpless with respect to the forcible sexual assault in which appellant obviously participated, both as a principal and an aider and abettor.

In addition to the aiding and abetting counts, the jury returned a verdict of guilty of the included offense of sexual assault in the second degree by submission of the victim by any means that would prevent resistance by a victim of ordinary resolution, § 6-4-303(a)(ii), supra.

■ As can be seen by looking at both §§ 6-4-302(a)(i) and 6-4-303(a)(ii), supra, the State must prove acts to compel "submission" by the actor. If such acts are proved beyond a reasonable doubt, the lack of consent by the victim is also proved. As said in Brown v. State, Wyo., 581 P.2d 189, 193 (1978):

"There is a difference between submission and consent, and submission does not necessarily involve consent. Acquiescence is not consent if induced by fear or reasonable apprehension of bodily harm, [citations]; and the reasonableness of the fear or apprehension rests with the fact finder. Resistance or consent in a rape case is a jury question, [citations]. Based upon the evidence, the jury in this case has resolved the question of consent adversely to this appellant."

Consent is swallowed up by acts of force, other acts, and the surrounding circumstances such as to prevent resistance by a person of ordinary resolution.

■ We cannot ignore the spontaneous complaint of the victim when released at the Mini Mart, her distraught and weak condition, her disheveled appearance, the manifestations of fright, the medical disclosures of bruises, scratches, abrasions, and bleeding of the genitals caused by trauma—physical injury. Brown v. State, supra. Evidence of a victim's physical appearance or condition after a sexual attack is always relevant. Elmer v. State, Wyo., 463 P.2d 14, reh. denied 466 P.2d 375 (1970), cert. denied 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82. All this, in addition to the testimony of the victim, is inharmonious with consent.

■ When we carefully examine the trial court's instruction and relate it to all the evidence of physical force and confinement in the vehicle, along with the presence of three sexually aroused males engaged in an uninhibited satisfaction of their lust and her condition upon release, there was no need for the jury to get beyond "1." of the challenged instruction, "[t]hat [the victim] did voluntarily consent to the act by word or conduct * * *." It is overwhelmingly obvious that she did not consent. When there is present such evidence of no consent, there is no need to go further and explore whether the victim, "2. * * * had the present ability to consent or the defendant could not reasonably have known that [the victim] lacked the present ability to consent."

■ The instruction offered by appellant additionally omitted the words of the pattern instruction "[s]ubmission alone may not be consent." These words are an important element of the offense charged since § 6-4-302(a)(i), supra, requires proof of "submission" through the actual application of physical force, and § 6-4-303(a)(ii), supra, requires proof that the assailant

caused "submission" by any means that would prevent resistance by a victim of ordinary resolution. Even if the victim here were not handicapped by a degree of deafness and mental retardation, her odds of putting up any effective resistance were practically nil. She was a very small woman of childlike proportions. The disparity in her physical strength compared to the superior strength of her aggressors would create reasonable fear and apprehension and discourage resistance by any reasonable person; this is more consistent with submission rather than consent. *Tryon v. State,* Wyo., 567 P.2d 290 (1977). Sexual intercourse is without consent when, for any reason, the victim is not in a position to exercise independent judgment about the matter. *Kennedy v. State,* Wyo., 470 P.2d 372, 376, reh. denied 474 P.2d 127 (1970), cert. denied 401 U.S. 939, 91 S.Ct. 933, 28 L.Ed.2d 218 (1971).

■ The offered instruction, in failing to deal with the issue of submission, was improper. A court is not required to give an instruction which is incomplete and may be properly refused. *Benson v. State,* Wyo., 571 P.2d 595 (1977). The State carried its burden of proving beyond a reasonable doubt that the victim did not consent to the sexual penetration by any of the gang.

Affirmed.

THOMAS, Justice, specially concurring.

I am in complete accord with the holding of my brethren regarding the use of hearsay testimony at a preliminary examination, and its sufficiency to demonstrate probable cause. I do not disagree with the views of my brethren with respect to the claim of instructional error, but I do have some comments of my own with respect to that argument.

The trial court is required to instruct the jury only with respect to the law applicable to issues actually raised by the evidence. *Hatheway v. State,* Wyo., 623 P.2d 741 (1981); *Benson v. State,* Wyo., 571 P.2d 595 (1977); and *Thomas v. State,* Wyo., 562 P.2d 1287 (1977). This court is not required

to deal with an interesting abstract theory which is unrelated to the issues which evolve from the facts in a particular case. In fact to do so would probably involve us in a violation of our rule that we do not furnish advisory opinions. The appellant's argument is sophistry because it departs from the facts of this case.

The record in this case discloses evidence of forcible sexual assault particularly from the victim. The evidence and testimony of the appellant were to the effect that the victim cooperated in the sexual acts as in an adventure in which she desired to participate. The evidence in the record thus disclosed the classic opposite positions so frequently found in a sexual assault scenario. No charges were levied against the appellant other than those consistent with forcible sexual assault.

In arguing in this appeal that the language of the consent instruction shifted the charge to one under either § 6–4–302(a)(iii) or (iv), W.S.1977, the appellant assumes that the nature of those sexual assault statutes was before the jury. So far as the record discloses, the jury had no information about those particular statutory provisions. Indeed to instruct on them would have been error because they assume no force, confinement or threat is necessary for the actor to accomplish his purpose. It therefore is speculative to urge that the jury may have convicted the appellant under a theory compatible with those statutory provisions.

On this record the appellant was entitled to an instruction about the defense of consent. A correct instruction was given with respect to this issue, and no other instruction was required. *Britton v. State,* Wyo., 643 P.2d 935 (1982); *Heinrich v. State,* Wyo., 638 P.2d 641 (1981); and *Channel v. State,* Wyo., 592 P.2d 1145 (1979). The instruction which the trial court gave, the source of which apparently is § 9.601, Wyoming Pattern Jury Instructions Criminal, correctly advised the jury with respect to the defense of consent, and the second paragraph of that instruction was necessary in

the context of voluntariness without regard to the special crimes of sexual assault defined in § 6–4–302(a)(iii) or (iv), W.S. 1977. The logical fallacy in the appellant's position is that it would result in a rule that a victim who is physically helpless or who through mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct could never be the victim of a forcible sexual assault no matter how brutal the actor's conduct so long as the actor claimed consent. This cannot be the rule.

The instruction offered by the appellant was properly refused because it did not adequately present the issue of consent as contrasted to mere submission. See *Britton v. State,* supra; *Brown v. State,* Wyo., 581 P.2d 189 (1978); *Tryon v. State,* Wyo., 567 P.2d 290 (1977); and *Kennedy v. State,* Wyo., 470 P.2d 372, reh. denied 474 P.2d 127 (1970), cert. denied 401 U.S. 939, 91 S.Ct. 933, 28 L.Ed.2d 218 (1971). Because the proffered instruction was incorrect, the trial court was justified in refusing it. This concept, coupled with the propriety of the instruction that the court did give, resolves the issue of instructional error and results in an affirmance.