[No. S018847. Dec. 9, 1991]

THOMAS PAUL WHITMAN, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Stuart Rappaport, Public Defender, Susan R. Bernardini and Barbara B. Fargo, Deputy Public Defenders, for Petitioner.

Wilbur F. Littlefield, Public Defender (Los Angeles), Laurence M. Sarnoff and Albert J. Menaster, Deputy Public Defenders, Gary M. Madinach and Madeline McDowell as Amici Curiae on behalf of Petitioner.

No Appearance for Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Clifford K. Thompson, Jr., Laurence K. Sullivan and Joan Killeen Haller, Deputy Attorneys General, for Real Party In Interest.

Dennis Kottmeier, District Attorney (San Bernadino), Joseph A. Burns, Deputy District Attorney, Kent S. Scheidegger and Charles L. Hobson as Amici Curiae on behalf of Real Party in Interest.

OPINION

LUCAS, C. J.—In this case, we resolve some issues presented by the adoption in June 1990 of an initiative measure designated on the ballot as Proposition 115 and entitled the "Crime Victims Justice Reform Act." Peti-

tioner herein raises various challenges under the federal and state Constitutions to the provisions of the measure that authorize the admission of hearsay evidence at preliminary hearings in criminal cases. (See also *Izazaga* v. *Superior Court, ante,* p. 356 [285 Cal.Rptr. 231, 815 P.2d 304] [challenge to reciprocal discovery provisions of Prop. 115]; *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282 [279 Cal.Rptr. 592, 807 P.2d 434] [challenge to retroactive application of Prop. 115]; *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077] [single-subject and revision challenges to Prop. 115].) He also contests the sufficiency and competency of the evidence presented at his preliminary hearing.

As will appear, we conclude that, properly construed and applied, the hearsay provisions of Proposition 115 are constitutionally valid. We also conclude, however, that the evidence admitted at petitioner's preliminary hearing, consisting entirely of hearsay testimony by a noninvestigating officer lacking any personal knowledge of the case, was insufficient and incompetent to constitute probable cause to bind petitioner over for trial, and that his motion to dismiss the charges should have been granted.

### FACTS

Petitioner was charged with one felony count of driving under the influence of alcohol and/or drugs with three or more prior similar convictions (Veh. Code, §§ 23152, subd. (a), 23175), one felony count of driving with a blood-alcohol level of 0.08 percent or more (*id.,* §§ 23152, subd. (b), 23175), as well as misdemeanor counts of driving with a suspended or revoked license (*id.,* § 14601.2, subd. (a)), and being under the influence of methamphetamine (Health & Saf. Code, § 11550). These offenses were alleged to have occurred on August 8, 1990. A preliminary hearing was held on September 19, 1990, leading to the filing of an information containing these charges.

At the hearing, the People called only a single witness, Officer Bruce Alexander, who was not one of the arresting or investigating officers and who had no direct, personal knowledge of petitioner's alleged offenses. Over petitioner's continuing objection to the use of hearsay evidence, Alexander attested to his eight years of employment as a police officer, and thereupon recounted to the magistrate various entries made in the report of the investigating officer, Officer Navin. Alexander confirmed that he had never discussed Navin's report with that officer, was not personally acquainted with Navin, and first became aware of Navin's report, and of the case against petitioner, on the morning of the preliminary hearing after the district attorney handed him a copy of Navin's report.

In response to the prosecutor's questioning, Alexander indicated that, according to Navin's report, on August 8, while in a marked patrol car, Navin saw a 1969 Chevrolet traveling eastbound on Cherry Avenue. Navin heard someone shout and saw the driver of the Chevrolet lean out the window to raise his right fist. Navin watched as a white Ford quickly passed the Chevrolet. Navin paced the Chevrolet, which was traveling 50 miles per hour in a 40 miles per hour zone. Navin thereupon made a traffic stop.

Alexander further testified that, according to Navin's report, the driver of the car identified himself as Thomas Paul Whitman. Among other things, Navin noticed the strong odor of alcohol, bloodshot eyes, and dilated pupils. The driver's mood changed from passive to belligerent, leading Navin to believe that the driver might be under the influence of drugs. Alexander continued his "testimony," relating, according to Navin, that the driver successfully completed the finger-dexterity test and balanced on one foot, but swayed when asked to walk a straight line. Believing the driver was under the influence, Navin transported him to the station where a blood test was administered. Counsel stipulated that a blood test revealed a blood-alcohol level of 0.08 percent and was positive for the presence of methamphetamine.

Thereupon, Alexander was permitted to state his opinion, based solely on the information revealed in Navin's report, that petitioner had been under the influence of alcohol and "perhaps some type of stimulant."

Defense counsel moved to strike all of Alexander's direct testimony for lack of proper foundation regarding Navin's qualifications as a police officer. The magistrate denied the motion, after permitting Alexander to opine that because Navin's badge number was considerably lower than his, Navin probably had 12 years' experience as a police officer.

On cross-examination, Alexander admitted he did not know the time or circumstances of the preparation of Navin's report, or the various tests conducted to determine petitioner's sobriety. Additionally, Alexander was unable to explain certain discrepancies and omissions in the report. Counsel elicited the fact that although Navin's report indicated petitioner's eyes were brown, in fact they are green.

Despite petitioner's objections and his argument that Alexander could not personally identify him as the suspect stopped by Navin, the magistrate held petitioner to answer on the counts charged. The magistrate noted that the description of petitioner contained in Navin's report closely matched the description in the records of the Department of Motor Vehicles, which was also placed in evidence.

Thereafter, petitioner moved the superior court to dismiss the information (Pen. Code, § 995), on the ground that the evidence elicited at the preliminary hearing was incompetent and insufficient to establish probable cause. The motion was denied, and the Court of Appeal summarily denied petitioner's application for mandate. We issued an alternative writ of mandate to consider the important constitutional and interpretive questions presented.

Petitioner raises a variety of arguments regarding the admissibility, and constitutional propriety, of Officer Alexander's hearsay testimony. Before we consider these contentions, we first review the new constitutional and statutory hearsay provisions added by Proposition 115.

CONSTITUTIONAL AND STATUTORY PROVISIONS

Proposition 115 added both constitutional and statutory language pertinent to our present inquiry. Section 30, subdivision (b), is added to article I of the state Constitution, declaring hearsay evidence admissible at preliminary hearings in criminal cases, as may be provided by law. ("In order to protect victims and witnesses in criminal cases, hearsay evidence shall be admissible at preliminary hearings, as prescribed by the Legislature or by the people through the initiative process.")

In addition, the measure amends section 872, subdivision (b), of the Penal Code to provide that a probable cause determination at a preliminary hearing may be based on hearsay statements related by a police officer with certain qualifications and experience. ("Notwithstanding Section 1200 of the Evidence Code [(the hearsay rule)], the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted. Any law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings.")

Additionally, section 1203.1 is added to the Evidence Code to provide a preliminary hearing exception to the general requirement that all hearsay declarants be made available for cross-examination. ("Section 1203 is not applicable if the hearsay statement is offered at a preliminary examination, as provided in Section 872 of the Penal Code.")

Further, Penal Code section 866, subdivision (a), is amended to give the magistrate discretion to limit the defendant's right to call witnesses on the

defendant's behalf. ("The magistrate shall not permit the testimony of any defense witness unless the offer of proof discloses to the satisfaction of the magistrate, in his or her discretion, that the testimony of that witness, if believed, would be reasonably likely to establish an affirmative defense, negate an element of a crime charged, or impeach the testimony of a prosecution witness or the statement of a declarant testified to by a prosecution witness.")

Finally, Penal code section 866, subdivision (b), explains that "It is the purpose of a preliminary examination to establish whether there exists probable cause to believe that the defendant has committed a felony. The examination shall not be used for purposes of discovery."

We note that our discussion herein relates solely to proceedings initiated by complaint and information rather than by indictment, because under Proposition 115, "If a felony is prosecuted by indictment, there shall be no postindictment preliminary hearing." (Cal. Const., art. I, § 14.1.) The validity of this provision of the measure is presently before this court in *Bowens* v. *Superior Court*, S019774.

## DISCUSSION

As previously indicated, in addition to contesting the sufficiency of the evidence elicited at the preliminary hearing, petitioner raises various constitutional challenges to the foregoing provisions of Proposition 115. He argues that the use of hearsay testimony without confrontation or cross-examination of the declarants violates his federal Sixth Amendment right to confrontation, his Fourteenth Amendment right to due process of law, and the separation of powers doctrine of article III of the state Constitution. In addition, he asserts Proposition 115 violates the single-subject and revision provisions (art. II, § 8, subd. (d), & art. XVIII) of the California Constitution.

In *Raven* v. *Deukmejian, supra*, 52 Cal.3d 336, we rejected an identical single-subject rule challenge to Proposition 115. We also rejected a revision challenge to the entire measure, invalidating only a severable provision that would have required state courts to interpret certain enumerated state constitutional rights consistently with the federal Constitution. The principles expressed in *Raven* adequately dispose of petitioner's single-subject rule and revision challenges. (See 52 Cal.3d at pp. 349-350.)

Before discussing the merits of petitioner's various remaining constitutional challenges, we first turn to his alternative argument to the effect

that, as an interpretive matter, the hearsay provisions of Proposition 115 did not contemplate, and do not permit, reliance on hearsay of the kind involved in this case. Thereafter, we address petitioner's constitutional arguments.

### 1. *Testimony of Noninvestigating Officers or "Readers"*

██ As an initial matter, we observe that "[t]he fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.]" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].) Similar rules would govern interpretation of measures adopted by initiative. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].)

██ As previously noted, Proposition 115 added new constitutional and statutory language relating to the use of hearsay evidence at preliminary hearings. The constitutional provision (art. I, § 30, subd. (b)) states that "hearsay evidence" is admissible at such hearings, as provided by law. An amendment to Penal Code section 872, subdivision (b), provides that a probable cause finding may be based on the testimony of certain qualified law enforcement officers relating the out-of-court statements of "declarants."

Petitioner's primary argument is that, as a matter of sound statutory interpretation, Officer Alexander should not have been permitted to relate the contents of Officer Navin's investigative report because Alexander was not involved in the investigation of the case and had no personal knowledge of the circumstances under which Navin's report was prepared. We agree. Properly construed, Proposition 115 does not authorize a finding of probable cause based on the testimony of a noninvestigating officer or "reader" merely reciting the police report of an investigating officer. We believe the probable intent of the framers of the measure was to allow a properly qualified investigating officer to relate out-of-court statements by crime victims or witnesses, including other law enforcement personnel, without requiring the victims' or witnesses' presence in court. The testifying officer, however, must not be a mere reader but must have sufficient knowledge of the crime or the circumstances under which the out-of-court statement was

made so as to meaningfully assist the magistrate in assessing the reliability of the statement.

New Penal Code section 872, subdivision (b), by its terms refers to "testimony of a law enforcement officer relating *the statements of declarants* made out of court . . . ." (Italics added.) A "declarant" is defined by Evidence Code section 135 as "a person who makes a statement." As the Legislative Analyst described it to the voters, the intent underlying this provision was to allow introduction of "out-of-court statements" at preliminary hearings if those statements are "introduced through the testimony of certain trained and experienced law enforcement officers." (Ballot Pamp., Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Primary Elec. (June 5, 1990) p. 33.) As the People observe, the section and its use of the term "declarants" is not limited to the statements of civilian or citizen witnesses but would include the statements or reports of any persons, including other law enforcement officers such as Officer Navin herein.

But other provisions of the measure convince us that the use of mere "readers" such as Officer Alexander was not contemplated by the measure. To permit testimony by noninvestigating officers that merely recites the contents of the reports of the investigating officers would render largely meaningless or nugatory the new statutory provision, also added by Proposition 115, that requires that the *testifying* officer have at least five years of law enforcement experience or have completed a training course covering the "investigating and reporting" of criminal cases. (Pen. Code, § 872, subd. (b).) This provision undoubtedly was intended to enhance the *reliability* of hearsay testimony at preliminary hearings. Yet such reliability is not furthered if the only testimonial function of the "qualified" noninvestigating officer such as Officer Alexander is to parrot information contained in a report prepared by another officer who may lack such extensive experience or training.

As petitioner observes, the experience and training requirements of Penal Code section 872, subdivision (b), could be readily circumvented if prosecutors were permitted routinely to designate the same "qualified" officer as a "reader" of the reports of other officers, regardless of their own qualifications, or lack thereof. The alternate requirement of training in "investigating and reporting" crimes strongly supports petitioner's position that Proposition 115's hearsay provisions were intended to foreclose the testimony of a noninvestigating officer lacking personal knowledge of either the crime or the circumstances under which the out-of-court statements were made. (See generally, Cowell, *When Prelims Turn Pro Forma* (Mar. 1991) 11 Cal. Law., at p. 104.)

Thus, in permitting only officers with lengthy experience or special training to testify regarding out-of-court statements, Penal Code section 872, subdivision (b), plainly contemplates that the testifying officer will be capable of using his or her experience and expertise to assess the circumstances under which the statement is made and to accurately describe those circumstances to the magistrate so as to increase the reliability of the underlying evidence.

Moreover, to allow testimony by noninvestigating officers or readers would seemingly sanction a form of double or multiple hearsay beyond the contemplation of the framers of, and voters for, Proposition 115. (See Evid. Code, § 1201 [multiple hearsay admissible only if each hearsay statement admissible under hearsay rule exception].) Although such multiple hearsay was not present in this case, we doubt that Proposition 115 was intended to sanction a procedure whereby a noninvestigating officer, lacking any personal knowledge of the matter, nonetheless would be permitted to relate not only what the investigating officer told him or her, but also what the other witnesses told the investigating officer. It is noteworthy that although Proposition 115 created an exception to the basic hearsay rule contained in Evidence Code section 1200 (see new Pen. Code, § 872, subd. (b)), the measure did not purport to create a similar exception for the multiple hearsay rule of Evidence Code section 1201.

In addition, an interpretation of Proposition 115 that would allow "reader" or multiple hearsay testimony would raise constitutional questions that we can and should avoid by limiting admissible hearsay testimony to testimony by qualified investigative officers. (See, e.g., *People* v. *Smith* (1983) 34 Cal.3d 251, 259 [193 Cal.Rptr. 692, 667 P.2d 149] [construing Prop. 8, "The Victims' Bill of Rights" initiative measure, to avoid constitutional doubts].) As discussed below, we believe that the latter, more limited, form of hearsay evidence satisfies federal requirements of *reliability* (see *Ohio* v. *Roberts* (1980) 448 U.S. 56, 63-65 [65 L.Ed.2d 597, 605-607, 100 S.Ct. 2531]), and thus properly may be admitted at preliminary hearings despite the defendant's inability to confront and cross-examine the declarant witness or victim. But substantial additional objections to the reliability of the evidence might arise if multiple hearsay were involved, and the defendant were also deprived of the opportunity to meaningfully cross-examine the testifying officer regarding the circumstances under which the out-of-court statement was made.

In the present case, for example, on cross-examination, Officer Alexander was unable to answer potentially significant questions regarding the methods and circumstances of Officer Navin's investigation, including the time the report was written, the details of the sobriety test given petitioner, and

petitioner's pupil reaction and degree of dilation. Indeed, Alexander was even uncertain how long Navin had been employed on the force or even whether Navin was a male or female officer. Similar uncertainties are inherent in any procedure in which the testifying officer acts as no more than a "reader" of another officer's investigative report.

In her concurring and dissenting opinion, Justice Kennard suggests that the term "declarant" in section 872, subdivision (b) should be interpreted to refer only to "citizen" declarants and not to police officer declarants. The statutory language contains no such limitation, however, and one of the principal purposes of Proposition 115—to increase the efficient administration of the criminal justice system, and, in particular, to streamline the preliminary hearing procedure (see, e.g., Prop. 115, §§ 1, subd. (c), 16, 17, 18, Primary Elec. (June 5, 1990) [Deering's Ann. Cal. Const. (1991 pocket supp.) note foll. art. I, § 14.1, pp. 44-45; Pen. Code, §§ 866, 871.6, 872])—strongly supports an interpretation of the provision in accordance with its "plain meaning," permitting a qualified officer to testify to out-of-court statements by fellow officers and thereby eliminating the need for the separate appearance and testimony of a substantial number of police officers at preliminary hearings. Although the concurring and dissenting opinion suggests that its proposed interpretation has the advantage of establishing a "bright line" test that the court's opinion lacks, in reality the suggested interpretation would simply narrow the class of persons whose out-of-court statements could be introduced, but would still require a further standard for determining the required relationship between the testifying officer and the out-of-court statement.

Thus, we conclude that the magistrate erred in allowing Officer Alexander to read or relate portions of Officer Navin's report, and that such error requires dismissal of the information. It appears, however, that the People will be entitled to refile the information (see Pen. Code, § 1387), and a new preliminary hearing may be held. Accordingly, for purposes of guiding the lower courts during any such further proceedings, we will consider petitioner's alternative contentions.

## 2. *Constitutional Right to Confrontation*

In the foregoing discussion, we construe Proposition 115 to allow an investigating officer to relate at the preliminary hearing any relevant statements of victims or witnesses, if the testifying officer has sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement. The new measure would permit the magistrate to base a finding of probable cause entirely on that testimony. (Pen. Code,

§ 872, subd. (b).) Petitioner asserts that such a procedure would violate his state and federal constitutional rights to confront his accusers. We disagree.

a.  *State Confrontation Clause*

Section 15 of article I of the state Constitution guarantees to the defendant in a criminal case various procedural rights, including the right "to be confronted with the witnesses against the defendant." We relied on that provision in *Mills* v. *Superior Court* (1986) 42 Cal.3d 951, 956-960 [232 Cal.Rptr. 141, 728 P.2d 211], to invalidate a former version of Penal Code section 872 that deprived defendants of certain confrontation and cross-examination rights at preliminary hearings.

Under the former statute at issue in *Mills* v. *Superior Court, supra,* a finding of probable cause could be based on the hearsay statements of a witness who was neither an eyewitness nor a victim, but only if the defendant failed to make reasonable efforts to secure the presence of the witness at the preliminary hearing. We grounded our decision invalidating the statute on prior California cases acknowledging the "critical importance" of the preliminary hearing as a mechanism to weed out groundless claims. As we stated, "Only by preserving the adversarial character of the preliminary hearing can we enable the magistrate responsibly to 'weigh the evidence, resolve conflicts and give or withhold credence to particular witnesses.' [Citations.]" (42 Cal.3d at p. 957.) We concluded that the challenged statute, by requiring a defendant to expend "reasonable efforts" to secure a witness's presence at the hearing, "unduly strains defendant's rights under article I, section 15, of the California Constitution." (*Id.* at p. 958.)

By virtue of the passage of Proposition 115, *Mills* v. *Superior Court, supra,* 42 Cal.3d 951, is no longer controlling authority. Although the state Constitution continues to afford an independent source of relief from infringement of the right to confront one's accusers (see *Raven* v. *Deukmejian, supra,* 52 Cal.3d 336 [invalidating Prop. 115 to extent it would have required interpretation of confrontation clause, and other procedural rights, consistently with federal Constitution]), nonetheless, by reason of the adoption of new section 30, subdivision (b), of article I, the state Constitution now expressly permits the admission of "hearsay" evidence at preliminary hearings, as provided by law. (Cf. Cal. Const., art. I, § 28, subd. (d) [added in 1982 by Prop. 8 to provide that all relevant evidence is admissible at trial or pretrial hearings, subject to then existing statutory hearsay rules].)

The new constitutional provision thus represents a specific exception to the broad confrontation right set forth in article I, section 15 of the California Constitution. (See *Izazaga* v. *Superior Court, supra, ante,* 356, at p. 371,

and cases cited [applying to reciprocal discovery provisions of Prop. 115 the rule that more recent, specific constitutional provisions override or limit older, more general provisions]; cf. *People* v. *Valentine* (1986) 42 Cal.3d 170, 181 [228 Cal.Rptr. 25, 720 P.2d 913] [express constitutional provision of Prop. 8 allowing in-court proof of defendant's ex-felon status overrides prior decisions stating contrary rule under state due process clause].) Thus, in this state, any future constitutional objection to the admission of such hearsay evidence at preliminary hearings must be founded on *federal* constitutional principles.

### b. *Federal Confrontation Clause*

The Sixth Amendment to the federal Constitution recites in pertinent part that "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

The foregoing confrontation clause is not an absolute bar to all hearsay evidence or other procedures which may limit or preclude a direct face-to-face confrontation between accused and accuser. Thus far, at least, the clause has operated to exclude admission *at trial* of some otherwise admissible hearsay evidence, although many exceptions exist to that bar. (See *Idaho* v. *Wright* (1990) 497 U.S. 805 [111 L.Ed.2d 638, 110 S.Ct. 3139] [admissibility *at trial* of hearsay statements by child victims of sexual abuse]; *Ohio* v. *Roberts, supra,* 448 U.S. at pp. 63-65 [65 L.Ed.2d 605-607] [admissibility *at trial* of hearsay statements if elements of reliability of testimony and unavailability of declarant are shown]; *Bourjaily* v. *United States* (1987) 483 U.S. 171, 182-184 [97 L.Ed.2d 144, 156-158, 107 S.Ct. 2775] [requirement of reliability of testimony satisfied by "firmly rooted" coconspirator exception to hearsay rule]; *United States* v. *Inadi* (1986) 475 U.S. 387, 394-400 [89 L.Ed.2d 390, 397-402, 106 S.Ct. 1121] [requirement of unavailability of declarant inapplicable to statements made by nontestifying coconspirator]; see also *Maryland* v. *Craig* (1990) 497 U.S. 836 [111 L.Ed.2d 666, 110 S.Ct. 3157] [invalidity of one-way closed circuit television procedure to elicit testimony *at trial* of child abuse victim]; *Coy* v. *Idaho* (1988) 487 U.S. 1012 [101 L.Ed.2d 857, 108 S.Ct. 2798] [propriety of placing screen between defendant and child victim *at trial*]; *Kentucky* v. *Stincer* (1987) 482 U.S. 730, 737-740 [96 L.Ed.2d 631, 642-644, 107 S.Ct. 2658] [excluding defendant from child victims' competency hearing was not confrontation clause violation because victims were available for cross-examination *at trial*]; *Herbert* v. *Superior Court* (1981) 117 Cal.App.3d 661, 667 [172 Cal.Rptr. 850, 19 A.L.R.4th 1276].)

Petitioner, focusing on the foregoing "reliability" element for evaluating hearsay evidence, contends that new Penal Code section 872, subdivision (b), "has no provision for guaranteeing the *reliability* of the hearsay." As we

construe the section, however, it does not permit hearsay testimony by a noninvestigating officer lacking any personal knowledge of the circumstances under which the out-of-court statement, declaration or report was made. Additionally, the experience and training requirements of the section help assure that the hearsay testimony of the investigating officer will indeed be as reliable as appropriate in light of the limited purpose of the preliminary hearing, as discussed in greater detail below. (See *Manson* v. *Brathwaite* (1977) 432 U.S. 98, 115 [53 L.Ed.2d 140, 154-155, 97 S.Ct. 2243] [reliability of trained, experienced police officers].) Although the underlying reliability of the victim or witness may remain untested until trial, we think the evaluation and cross-examination of the testimony of the qualified investigating officer provides sufficient basis for a pretrial probable cause determination.

Finally, under new Penal Code section 866, subdivision (a), the magistrate has authority to permit the defendant to call any witness whose proposed testimony would be reasonably likely to establish an affirmative defense, negate a crime element, or impeach prosecution evidence. Based on the foregoing safeguards or limitations, the new provisions appear to satisfy petitioner's reliability objections.

Moreover, aside from questions of reliability, it is doubtful that the federal confrontation clause operates to bar hearsay evidence offered *at a preliminary hearing* held to determine whether probable cause exists to hold the defendant for trial.

Several California appellate cases have assumed that either the Sixth or Fourteenth Amendments to the federal Constitution guarantees a right of confrontation and cross-examination at preliminary hearings. (E.g., *People* v. *Harris* (1985) 165 Cal.App.3d 1246, 1256 [212 Cal.Rptr. 216], and cases cited; *Herbert* v. *Superior Court, supra,* 117 Cal.App.3d 661, 665-666, & fn. 3; *Gallaher* v. *Superior Court* (1980) 103 Cal.App.3d 666, 671 [162 Cal.Rptr. 389]; see also *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 875 [59 Cal.Rptr. 440, 428 P.2d 304]; but see *Herbert* v. *Superior Court, supra,* 117 Cal.App.3d at pp. 671-672 [conc. opn. by Puglia, P. J.].) As petitioner acknowledges, however, the United States Supreme Court has never so held. Indeed, as we will explain, there are indications in prior high court cases that a constitutional challenge to the hearsay procedures now permitted by Proposition 115 would fail. Moreover, the scope and purpose of California preliminary hearings were considerably broader when the foregoing appellate cases were decided, thus calling in question the continued validity of their conclusion.

First, as petitioner acknowledges, other than the probable cause hearing held to justify continued *detention* of the accused (discussed below), there

exists no federal constitutional right to a preliminary hearing to determine whether a case should proceed to trial. Instead, in the federal system, most felonies and capital offenses are prosecuted by *indictment.* (U.S. Const., Fifth Amend.; see *Smith* v. *United States* (1959) 360 U.S. 1, 6-7 [3 L.Ed.2d 1041, 1046-1047, 79 S.Ct. 991]; *United States* v. *Luxenberg* (6th Cir. 1967) 374 F.2d 241, 248, and cases cited.) Moreover, it is well established that hearsay is admissible in indictment proceedings before federal grand juries. (*Costello* v. *United States* (1956) 350 U.S. 359, 363-364 [100 L.Ed. 397, 402-403, 76 S.Ct. 406].)

Indeed, the United States Supreme Court has repeatedly stated that "The right to confrontation is *basically a trial right.*" (*Barber* v. *Page* (1968) 390 U.S. 719, 725 [20 L.Ed.2d 255, 260, 88 S.Ct. 1318], italics added; accord *Kentucky* v. *Stincer, supra,* 482 U.S. at p. 737 [96 L.Ed.2d at p. 642]; *Pennsylvania* v. *Ritchie* (1987) 480 U.S. 39, 52 [94 L.Ed.2d 40, 54, 107 S.Ct. 989]; *California* v. *Green* (1970) 399 U.S. 149, 156-157 [26 L.Ed.2d 489, 495-497, 90 S.Ct. 1930] [federal confrontation clause was aimed at eliminating practice of *trying* defendants on basis of witnesses' out-of-court statements and declarations].) As *Barber* explained (in the context of contrasting the *utility* of confrontation at a preliminary hearing), the confrontation right "includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." (390 U.S. at p. 725 [20 L.Ed.2d at p. 260].)

A few years later, the high court squarely held that the federal confrontation clause does not require that full adversarial safeguards, such as presentation of witnesses and cross-examination of their testimony, be made available for every pretrial probable cause hearing. (*Gerstein* v. *Pugh* (1975) 420 U.S. 103, 119-124 [43 L.Ed.2d 54, 68-71, 95 S.Ct. 854], hereafter *Gerstein.*) *Gerstein* explained that, for purposes of Fourth Amendment analysis in determining whether probable cause exists to detain an arrestee for a significant time pending trial, a full adversarial hearing, together with confrontation and cross-examination of witnesses, need not be afforded so long as a "timely judicial determination" of probable cause is made as a prerequisite to continued detention. (*Id.* at p. 126 [43 L.Ed.2d at p. 72].)

The court in *Gerstein* contrasted Fourth Amendment detention hearings with the more formal preliminary hearings used in many states to determine whether the evidence justifies going to trial. (420 U.S. at pp. 119-120 [43

L.Ed.2d at pp. 68-69].) The court observed that "adversary procedures are customarily employed" during such formal hearings (*id.* at p. 120 [43 L.Ed.2d at p. 69]), but it avoided suggesting that such procedures are constitutionally mandated. Instead, *Gerstein* simply noted "that state systems of criminal procedure vary widely," encouraged such "experimentation," and concluded that "There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole." (*Id.* at p. 123 [43 L.Ed.2d at p. 71].)

Significantly, *Gerstein* observed that, by their very nature, probable cause determinations do not involve "the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. [Citation.] This is not to say that confrontation and cross-examination might not enhance the reliability of probable cause determinations in some cases. In most cases, however, their value would be too slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed in making the Fourth Amendment determination of probable cause." (420 U.S. at pp. 121-122 [43 L.Ed.2d at pp. 69-70], fn. omitted.)

The *Gerstein* court acknowledged that a prior decision (*Coleman* v. *Alabama* (1970) 399 U.S. 1 [26 L.Ed.2d 387, 90 S.Ct. 1999]) had held an Alabama preliminary hearing was a "critical stage" of the prosecution for which the presence of counsel was required. But the court noted that under the Alabama law involved in *Coleman*, not only was the purpose of the hearing to determine probable cause to charge an offense, but the suspect was specifically allowed to confront and cross-examine prosecution witnesses at such hearings, thus making it essential that the defendant have counsel's assistance. The *Gerstein* court continued by stating that "This consideration [need for counsel's assistance] does not apply when the prosecution is not required to produce witnesses for cross-examination." (420 U.S. at p. 123 [43 L.Ed.2d at pp. 70-71].) *Gerstein*'s implication seems to be that state limitations on the purpose and scope of the preliminary hearing may reduce the necessity for adversarial procedural safeguards such as right to counsel.

Assuming, based on the foregoing language in *Gerstein*, *supra*, 420 U.S. 103, and *Coleman* v. *Alabama*, *supra*, 399 U.S. 1, that the confines of the federal confrontation clause may vary depending on the purpose and scope of the hearing provided by state law, it seems reasonable to conclude that the federal clause is not violated by allowing hearsay testimony at post-Proposition 115 preliminary hearings in this state. Under that measure, the very purpose of the hearing has been considerably narrowed: "It is the purpose of

a preliminary examination to establish whether there exists probable cause to believe that the defendant has committed a felony. *The examination shall not be used for purposes of discovery.*" (Pen. Code, § 866, subd. (b), italics added.)

The foregoing statutory pronouncement marks a sharp contrast to this court's previous expansive concept of the preliminary hearing as a discovery and trial preparation device, allowing counsel the opportunity to "fashion" their impeachment tools for use in cross-examination at trial, to preserve testimony favorable to the defense, and to provide the defense "with valuable information about the case against the accused, enhancing its ability to evaluate the desirability of entering a plea or to prepare for trial." (*Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 588 [150 Cal.Rptr. 435, 586 P.2d 916].) Significantly, the utility of the preliminary hearing as a discovery tool has been cited in support of the minority position that the use of hearsay at such hearings violates the defendant's confrontation rights. (See, e.g., *State* v. *Anderson* (Utah 1980) 612 P.2d 778, 784-786 [relying on confrontation clause of Utah Const.].)

As Justice Puglia explained in his concurring opinion in *Herbert* v. *Superior Court, supra,* 117 Cal.App.3d at pages 671-672, "The constitutional right of confrontation is 'basically a trial right' [citations]. Although the federal Constitution requires a probable cause hearing to justify significant pretrial detention of defendant, that hearing need not include traditional adversary safeguards such as the right of confrontation [citing *Gerstein, supra,* 420 U.S. 103]. Moreover, the federal Constitution does not require a judicial hearing at all as a prerequisite to prosecution by information. [Citation.] A fortiori, when state procedure nevertheless provides for such a hearing, it would logically follow that the federal Constitution does not require the entire panoply of procedural rights available at trial to be observed in the pretrial hearing [citation]."

We agree with Justice Puglia's analysis. We note that, under the express language of rule 5.1(a) of the Federal Rules of Criminal Procedure (18 U.S.C.), as approved by the United States Supreme Court, a magistrate at a federal preliminary examination may base his or her finding of probable cause in whole, or in part, on hearsay evidence. (See Wright, Federal Practice and Procedure (2d ed. 1982) Criminal, § 85, pp. 183-184.) We think it would be anomalous to hold that the admission of such evidence at a comparable state proceeding violates federal confrontation clause principles. The wide majority of sister state courts agree. (See Note, *Confrontation Rights and Preliminary Hearings,* 1986 Utah L. Rev. 75, 83, fn. 54, and cases cited [criticizing *State* v. *Anderson, supra,* 612 P.2d 778].) As stated in one of the cases representing the majority rule, "to impose the same rules of evidence at the preliminary hearing as at the trial stage would amount to the

granting of a second trial and this would be judicial waste and delay. A preliminary hearing is not designed to be a dress rehearsal for the trial." (*Wilson* v. *State* (Wyo. 1982) 655 P.2d 1246, 1251.)

■ We conclude that the new, limited form of preliminary hearing in this state sufficiently resembles the Fourth Amendment probable cause hearing examined in *Gerstein, supra,* 420 U.S. 103, to meet federal confrontation clause standards despite reliance on hearsay evidence.

### 3. *Federal Due Process Concerns*

■ Petitioner also contends that new Penal Code section 872, subdivision (b), denies him due process by impliedly providing that "only the prosecution may introduce hearsay." In petitioner's view, the new hearsay provisions should be invalidated for lack of reciprocity. (See *Wardius* v. *Oregon* (1973) 412 U.S. 470, 474-479 [37 L.Ed.2d 82, 87-90, 93 S.Ct. 2208] [absence of reciprocity fatal, under Fourteenth Amendment, to Oregon notice-of-alibi discovery scheme].) In *Wardius,* the court stressed the unfairness of a discovery procedure that denied the defendant significant procedural benefits afforded the state, and thereby interfered with his ability to secure a fair trial. (See *id.* at pp. 474-476, & fn. 6 [37 L.Ed.2d at pp. 87-88].)

We find no similar unfairness here for, properly construed, the new hearsay statute contains no broad grant of authority to the prosecutor to rely on hearsay evidence. The section merely specifies a further, limited exception to the general hearsay exclusionary rule of Evidence Code section 1200, by allowing a probable cause finding to be based on certain hearsay testimony by law enforcement officers having specified experience or training. In light of the specialized nature of the exception, we see nothing fundamentally unfair in failing to provide some similar hearsay exception favoring the defense. (Indeed, although we leave the question open, the new provision might be interpreted as permitting *the defendant* to call a law enforcement officer to relate statements which might rebut a finding of probable cause.) Defendants continue to enjoy the benefits of all preexisting hearsay exceptions. (See Evid. Code, § 1220 et seq.) The burden of proof remains on the prosecutor to establish probable cause to believe an offense was committed. We note that petitioner has not indicated he unsuccessfully sought to introduce hearsay evidence comparable to the law enforcement testimony permitted under the new section.

### 4. *State Separation of Powers Doctrine*

■ Finally, petitioner argues that the new hearsay procedures violate the constitutional doctrine of separation of powers (Cal. Const., art. III, § 3), in that the prosecutor is given excessive power to control the quantity and quality of the evidence admitted at preliminary hearings. (See *Esteybar* v.

*Municipal Court* (1971) 5 Cal.3d 119 [95 Cal.Rptr. 524, 485 P.2d 1140] [prosecutor improperly vested with authority to prevent magistrate from reducing offense to misdemeanor]; *People v. Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993] [prosecutor's improper authority to prevent trial court from dismissing allegation of prior conviction].)

First, as previously noted, by reason of Proposition 115, the state Constitution now expressly permits the admission of hearsay evidence at preliminary hearings. Thus, the prosecutor's ensuing "control" over the kind of evidence admitted at such hearings is specifically authorized by the Constitution, and the general separation of powers doctrine would not apply. (See *Serrano v. Priest* (1971) 5 Cal.3d 584, 596 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

Moreover, we discern no separation of powers violation here. Although the prosecutor is allowed to rely on hearsay evidence in presenting his or her case at the preliminary hearing, and may require the defendant to make a satisfactory proof offer before the defendant may call any defense witnesses (Pen. Code, § 866, subd. (a)), the magistrate retains full authority and discretion to rule on the sufficiency of the defendant's proof offer, to allow the admission of relevant defense evidence, and ultimately to determine whether the proffered evidence demonstrates probable cause to hold the defendant to answer for the charged offenses. The foregoing procedures are readily distinguishable from the prosecutor's absolute "veto" powers deemed excessive in *People v. Tenorio, supra,* 3 Cal.3d 89, and *Esteybar v. Municipal Court, supra,* 5 Cal.3d 119.

## CONCLUSION

Because the magistrate's finding of probable cause in this case was based on the improper and unauthorized use of "reader" testimony, we conclude that the superior court erred in denying petitioner's motion to set aside the information under Penal Code section 995. Accordingly, the order of the Court of Appeal denying such relief is reversed and the Court of Appeal is directed to issue a peremptory writ of mandate compelling the superior court to vacate its prior order and to enter a new order granting defendant's motion to set aside the information.

Panelli, J., Arabian, J., Baxter, J.,and George, J., concurred.

**MOSK, J.,** Concurring.—I concur in the judgment. Manifestly, petitioner is entitled to the relief he seeks.

I write separately to address the crucial issue of statutory construction.

The people added a new subdivision (b) to Penal Code section 872—hereafter section 872(b)—when the voters approved an initiative constitutional amendment and statute designated as Proposition 115 on the June 5, 1990, Primary Election ballot. The provision declares that "Notwithstanding Section 1200 of the Evidence Code"—which states the rule generally barring hearsay—"the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted. Any law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings."

Plainly, section 872(b) creates a new exception to the hearsay rule. What is not plain, however, is its meaning.

Section 872(b) may be construed narrowly to allow hearsay if given by an officer who simply possesses specified training or experience in, among other things, the investigation of cases. This interpretation cleaves to the literal meaning of the words used in the statutory provision.

Section 872(b) may also be construed somewhat more broadly to allow hearsay if given by an officer who possesses such training or experience in investigation *and has actually investigated the case in question.* This interpretation seeks to read the condition stated in the statutory provision in light of the condition's evident purpose, i.e., to assure the reliability of the hearsay given by the officer.

In choosing between these two constructions of section 872(b), I believe that we should make our decision against the background of the principles that underlie the law of hearsay. It is manifest that in enacting the statutory provision, the people legislated in this doctrinal context: they recognized the rule against hearsay and created an exception thereto. Accordingly, we should seek to adopt the interpretation that is the more consonant with those principles.

The hearsay rule generally rejects out-of-court statements offered for their truth because, without the test of cross-examination, they are not deemed sufficiently reliable for admission. (E.g., 1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 558, p. 534 [Cal. law]; 5 Wigmore, Evidence (Chadbourn ed. 1974) Analytic Rules: The Hearsay Rule, § 1362, p. 3 (hereafter Wigmore) [general Anglo-American common law].) Exceptions exist for classes of statements that meet requirements including possession

of adequate indicia of trustworthiness. (E.g., 5 Wigmore, *supra*, Exceptions to the Hearsay Rule, § 1422, at pp. 253-254 [general Anglo-American common law]; see *People v. Tewksbury* (1976) 15 Cal.3d 953, 966 [127 Cal.Rptr. 135, 544 P.2d 1335] [Cal. law].)

The narrow construction of section 872(b)—viz., hearsay may be given by an officer with specified training or experience in investigation—is discordant when played against the principles set forth above. Under this reading of the statutory provision, the exception created is not only new but apparently novel. Reliability is not assured for the extrajudicial statements at issue. Like all such statements, they are not subject to cross-examination.[1] Neither can they be held to possess adequate indicia of trustworthiness. If they could, they would be admissible if offered by any otherwise competent witness. They are not. As stated, they are admissible only if given by an officer with specified training or experience. To be sure, such training or experience may give grounds for expectation that the statements are reported accurately. But in no way does it guarantee that they are trustworthy in and of themselves.

The somewhat broader construction of section 872(b)—viz., hearsay may be given by an officer who possesses specified training or experience in investigation and has actually investigated the case in question—is far less discordant. True, even under this reading of the statutory provision, the exception created is apparently novel. But here at least, reliability can be assured to some extent. As explained, the extrajudicial statements at issue cannot be held to possess adequate indicia of trustworthiness. They are, however, subject to a kind of indirect cross-examination. An officer who possesses specified training or experience in investigation and has actually investigated the case can be meaningfully questioned about all the matters that might be included in any relevant statement. Through such questioning, the trustworthiness of the statement canbetestedinsomeappreciable way.[2]

---

[1] I note in passing that Evidence Code section 1203 generally provides that "The declarant of a statement that is admitted as hearsay evidence may be called and examined by any adverse party as if under cross-examination concerning the statement." (*Id.*, subd. (a).) Evidence Code section 1203.1, which was added by the people when the voters approved Proposition 115, declares that that provision "is not applicable if the hearsay statement is offered at a preliminary examination" pursuant to section 872(b).

[2] Of course, on occasion an officer who might otherwise be said to possess specified training or experience in investigation and to have actually investigated the case may prove to have inadequate knowledge of the matters included in a particular extrajudicial statement to allow meaningful questioning thereon. Such an officer cannot be deemed to satisfy the training-or-experience and actual-investigation requirements of section 872(b).

Because the latter construction of section 872(b) is more harmonious than the former within the principles that underlie the law of hearsay, I would adopt it as our interpretation of the statutory provision.[3]

I now turn briefly to the case at bar. Petitioner seeks a writ of prohibition against the superior court to compel it to dismiss the information and to restrain it from proceeding further. After a preliminary examination, the magistrate made an order holding petitioner to answer the charges in the complaint. Petitioner unsuccessfully moved the superior court to dismiss the ensuing information under Penal Code section 995. He should have succeeded. The magistrate's order was based essentially on hearsay given by Officer Bruce Alexander, who related an extrajudicial statement by Officer Navin. Alexander evidently had sufficient training or experience in investigation. But he did not actually investigate the case—and, indeed, did not have any significant knowledge thereof. Consequently, the hearsay was inadmissible. As a result, the order was without sufficient support. Therefore, petitioner is entitled to the relief he requests.

For the reasons stated above, I concur in the judgment.

**KENNARD, J.,** Concurring and Dissenting.—I agree with the majority that those portions of Proposition 115 authorizing the use of certain hearsay evidence at preliminary hearings do not violate the state or the federal Constitution. I also agree that "reader" testimony, such as that offered by the prosecution in this case, is inconsistent with the purposes underlying Proposition 115, and thus defendant should not have been held to answer in the superior court.

But the manner in which the majority dispenses with "reader" testimony is deficient. Presented with language in Proposition 115 of uncertain meaning, the majority reaches a decision that compounds, rather than resolves, the uncertainty. In legal proceedings, uncertainty means litigation, and litigation means delay. By failing to articulate a workable "bright line" rule for hearsay evidence at preliminary hearings, the majority opinion poses a perplexing problem for magistrates and attorneys who will have to decipher its Delphic utterances, frustrating Proposition 115's goal of making our system of criminal justice both "swift and fair."

I.

To determine the scope of Proposition 115's scheme permitting the use of hearsay testimony at preliminary hearings, it is necessary to focus on two of

---

[3]It hardly bears noting after one has read their opinion that the majority come close to adopting the foregoing interpretation of section 872(b), but for some reason shy away from doing so.

its provisions: a constitutional amendment authorizing the use of hearsay testimony and a statutory provision implementing the constitutional authorization.[1]

The initiative's amendment adds article I, section 30, subdivision (b) (article I, section 30(b)) to the California Constitution. That provision reads: "In order to protect victims and witnesses in criminal cases, hearsay evidence shall be admissible at preliminary hearings, as prescribed by the Legislature or by the people through the initiative process."

To implement this amendment to the state Constitution, Proposition 115 adds to the Penal Code section 872, subdivision (b) (section 872(b); all further statutory references are to the Penal Code), which provides: "[At a preliminary hearing] the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted. Any law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings."

As I shall explain, in determining whether the hearsay testimony offered in this case was admissible, both of these provisions must be considered.

## II.

In this case, Officer Navin stopped defendant for speeding, and, based on observations leading her to believe that defendant had been driving under the influence of alcohol and/or drugs, arrested him. But Navin did not testify at defendant's preliminary hearing, at which the only witness called by the People was Officer Alexander. He had the requisite five years of law enforcement experience set forth in section 872(b). He had, however, never discussed the case with Officer Navin, and did not even know whether Navin was a man or a woman. Nevertheless, the magistrate allowed Officer Alexander to testify about Officer Navin's observations, by reading from Navin's police report. Based on this testimony, the magistrate held defendant to answer in the superior court.

---

[1] As the majority explains, a constitutional amendment was required because under previous California law the confrontation clause of the California Constitution (Cal. Const., art. I, § 15) limited the use of hearsay evidence at preliminary hearings. (*Mills* v. *Superior Court* (1986) 42 Cal.3d 951 [232 Cal.Rptr. 141, 728 P.2d 211]; see maj. opn., *ante*, at pp. 1076-1077.)

I agree with the majority that Officer Alexander's "reader" testimony is inadmissible under section 872(b). As the majority observes, section 872(b)'s requirement that officers who give hearsay testimony must either have five years of experience or complete a training course covering the "investigation and reporting" of criminal cases "was intended to enhance the *reliability* of hearsay testimony at preliminary hearings." (Maj. opn., *ante*, at p. 1073, italics in original.) That requirement would be rendered meaningless if a police officer simply read from another officer's report.

The majority, however, would permit "reader" testimony if the testifying officer has "sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement." (Maj. opn., *ante*, at pp. 1072-1073.) This is where I part company with the majority. By permitting hearsay testimony in these circumstances, the majority fails to take into account Proposition 115's express purpose in permitting hearsay testimony at preliminary hearings, as described in article I, section 30(b).

Article I, section 30(b) explains that Proposition 115 permits hearsay at the preliminary hearing "to protect victims and witnesses in criminal cases . . . ." Although the provision does not explain what victims and witnesses are to be protected from, several possibilities come immediately to mind. Testifying causes victims and witnesses to relive an often stressful and traumatic experience, it disrupts their daily routines, and it provides an opportunity for harassment or retaliation by the defendant or friends of the defendant. If the recollections of victims and witnesses can be presented through the hearsay testimony of an officer, these hazards and inconveniences are avoided.

The objective of article I, section 30(b), can be achieved by applying its protections to victims and witnesses other than police officers. Compared to private citizens who are victims of or witnesses to a crime, officers testifying at a preliminary hearing are significantly less likely to be harassed or intimidated by criminal defendants, and less likely to be reliving an unusually stressful or traumatic experience. And although officers may have their daily routines disrupted by court appearances, such appearances are within the scope of their duties. An officer's job is not finished when a suspect is arrested; rather, it continues through conviction and punishment. Like prosecutors and judges, officers are an integral part of the criminal justice system. Attendance at court is an occupational hazard of a career in law enforcement.

In sum, protection of private citizens rather than police officer witnesses appears to have been the fundamental concern underlying the phrase "to

protect victims and witnesses in criminal cases," as expressed in article I, section 30(b). Accordingly, section 872(b), which implements article I, section 30(b), should be construed as establishing a new general hearsay exception for the out-of-court statements of private citizens only, not those of police officers. Not only would this construction implement the purposes of Proposition 115, it would also create a clear, workable standard that would meaningfully assist magistrates and attorneys.

The majority opinion makes no attempt to explain how its interpretation of section 872(b) is consistent with the purpose of "protect[ing] victims and witnesses" set forth in article I, section 30(b). It merely makes a broad and unsupported assertion that qualified officers may "relate out-of-court statements by crime victims or witnesses, including other law enforcement personnel . . . ." (Maj. opn., *ante*, at p. 1072.) For the reasons I have expressed above, this assertion is inconsistent with the intent of Proposition 115.

### III.

Not only is the majority's holding unfaithful to the intent of Proposition 115, it is also likely to mire the criminal justice system in confusion.

The majority holds that an officer can testify based on another officer's report if the testifying officer's "knowledge of the crime or the circumstances" is sufficient to "meaningfully assist the magistrate" in determining reliability. This vague test contains no guidance whatsoever for magistrates and litigators, leaving them adrift on the flood of litigation likely to ensue from efforts to grasp the meaning of the majority's ill defined terminology regarding the testifying officer's "knowledge of the crime or the circumstances" and ability to "meaningfully assist the magistrate."

Can officers "meaningfully assist the magistrate" if they observed the preparation of the police report, but have no independent knowledge of the circumstances of the offense? Is the majority's "meaningful assistance" requirement met if, before testifying at the preliminary hearing, the testifying officer spoke to the officer who prepared the report and was assured of the reliability of the report, but the two officers did not discuss the contents of the report? What if the testifying officer's "knowledge of the crime" was gained from reading a number of police reports that had been prepared by various officers—can that officer then testify as to the contents of each of the reports he or she has read? And if, after the magistrate ruled the testimony to be inadmissible, the testifying officer telephones the officer who prepared the report and discusses its contents for five or ten minutes, can the testify-

ing officer then resume the witness stand and read from the other officer's report?

Because the majority's vague and confusing test will not answer these questions, different magistrates presented with similar facts will make inconsistent rulings. To resolve the inconsistencies and uncertainties, the parties will be required to resort to the time-consuming pursuit of appellate remedies. Eventually the Courts of Appeal will provide content to the majority's empty formulation. In the meantime, however, the majority's failure to create a workable "bright line" rule for hearsay evidence at preliminary hearings will serve to obstruct, rather than to streamline, the criminal justice system, thereby frustrating the people's expressed purpose to create "a system in which justice is swift and fair" (Prop. 115, § 1, subd. (c), Primary Elec. (June 5, 1990) [Stats. 1990, No. 1 Deering's Adv. Legis. Service, p. 265]).