Filed 5/4/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALVIN PINEDA,<br><br>    Defendant and Appellant. | B343654<br><br>Los Angeles County<br>Super. Ct. No. TA128998 |

APPEAL from an order of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

We grapple with the hearsay rule. Alvin Pineda petitioned to be resentenced under section 1172.6 of the Penal Code. We affirm the denial of his petition because declarations against interest in evidence at Pineda's preliminary hearing sealed his fate. Undesignated statutory citations are to the Penal Code.

In 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) altered the rules of murder liability to ensure punishment more closely matched culpability. (*People v. Arellano* (2024) 16 Cal.5th 457, 472.) This new law established a resentencing process, now codified in section 1172.6. This statute permits people convicted of murder, attempted murder, or manslaughter under a theory made invalid by the current law to petition the sentencing court to vacate the conviction and to seek resentencing. (§ 1172.6, subd. (a)(1).) If petitioners make a prima facie showing of eligibility for relief, the trial court holds an evidentiary hearing. (§ 1172.6, subd. (d)(3).) The trial court then sits as the trier of fact and determines whether the petitioner could be found guilty of murder or attempted murder under current law. (§ 1172.6, subd. (d)(3).) The Evidence Code governs the admission of evidence at the evidentiary hearing, "except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law . . . ." (*Ibid*.) However, the court shall exclude any hearsay admitted at a preliminary hearing pursuant to subdivision (b) of section 872 unless the evidence is admissible under an exception to the hearsay rule. (*Ibid*.)

Before deciding Pineda's petition, the court set an evidentiary hearing. The only evidence in the record was from the preliminary hearing. Officer Jose Carias had testified at the preliminary hearing under section 872, subdivision (b), which

2

permits hearsay testimony under certain conditions. (See *Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1067–1068, 1070–1083.) Thus, in determining whether Pineda could still be convicted under current law, the trial court could consider the hearsay testimony of Carias, but *only* if a hearsay exception lifted the basic hearsay bar. (§ 1172.6, subd. (d)(3).)

The pivotal question is whether the trial court properly admitted Carias's testimony relaying what codefendant Gilberto Salinas said during a *Perkins* operation. (See *Illinois v. Perkins* (1990) 496 U.S. 292, 294–300 [describing operation].) Without that evidence, the prosecution could not identify Pineda as the shooter.

The trial court properly admitted Salinas's previously admitted statements because the court rightly concluded they were against his penal interest. Therefore, substantial evidence supported the trial court's finding that Pineda could still be convicted under current law.

We deferentially review this ruling. (*People v. Schell* (2022) 84 Cal.App.5th 437, 442.)

At the preliminary hearing, Carias testified that officers arrested a man named Salinas, who became Pineda's codefendant. Police put Salinas in a cell with a confidential informant and taped their conversation. Salinas identified Pineda as the shooter, as follows.

Salinas said he was a member of the Hangout Boys gang and went by the moniker Little Boy. He and some fellow Hangout Boys members were at a baptismal party when Salinas recognized Rudolfo Alarcon as someone from a rival gang: the Playboys. This Playboy fought with one of Salinas's "homeys."

3

Salinas and his fellow gang members felt outnumbered, so Salinas told other members to join them, and to bring a gun.

Salinas identified "Alvin," who went by the moniker "True." Alvin arrived with a gun. Salinas took the gun to take care of the problem. During a confrontation with the Playboys group, Alarcon began dissing Salinas. Salinas pulled the gun as a second fight broke out. One Playboy struggled with Salinas, trying to take the gun, and the gun fell to the floor. "True" — that is to say, Alvin Pineda — got the gun and began shooting. Salinas said one person died and another three or four people were injured.

Other testimony put Pineda's cell phone near the party at the time of the shooting. Pineda's phone also had text messages from a fellow gang member at the party telling him to come and bring a gun to make some "dead bunnies," referring to Playboy gang members.

Pineda pleaded no contest to voluntary manslaughter and two counts of willful, deliberate, and premediated attempted murder.

At the resentencing hearing, the court admitted Carias's hearsay testimony about Salinas's statements from the preliminary hearing. The court correctly ruled these statements were declarations against interest.

Evidence Code section 1230 defines this hearsay exception. In relevant part, it states (with our emphasis): "Evidence of a statement by a declarant . . . is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, . . . so far *subjected him to the risk of civil or criminal liability*, . . . that a reasonable [person] in his position

4

would not have made the statement unless he believed it to be true."

Salinas's statements were declarations against interest. They showed he had engineered assaults: bring the gun so we can shoot Playboys. They subjected Salinas to a risk of criminal liability. Reasonable people in Salinas's position would not have made these statements unless they believed them.

Pineda argues that, at the time of the preliminary hearing, the court did not explicitly find Salinas was unavailable. This is true. But the resentencing court may admit evidence previously admitted as long as it would be admissible today. (§ 1172.6, subd. (d)(3); *People v. Ramos* (2025) 112 Cal.App.5th 174, 189 [section 1172.6, subdivision (d)(3) creates a "broader exception to hearsay rule" because it allows previously admitted evidence, if it would be admissible today, without additional requirements].) The court admitted the jailhouse statements, and they are the type of evidence that would be admissible today. (§ 1172.6, subd. (d)(3).) The trial court rightly admitted this testimony.

The resentencing court also admitted a recording of the full *Perkins* operation. The defense objected because the court had not previously admitted the recording, and the prosecution had not laid a sufficient foundation, including showing that Salinas was currently unavailable. The trial court overruled the objections, noting the recording "would have been admissible" at trial. This misunderstands the rules laid out in section 1172.6, subdivision (d)(3). That section permits evidence previously admitted as long as it would still be permissible under the Evidence Code as it stands today. (§ 1172.6, subdivision (d)(3).) Whether something a court had not admitted *would have been admissible* at a previous time is immaterial. However, Carias's

testimony and the other admissible testimony in the preliminary hearing provided substantial evidence to support the court's finding, so any error in admitting the recording was harmless.

**DISPOSITION**

We affirm.


WILEY, J.


We concur:



STRATTON, P. J.



SCHERB, J.