Filed 6/14/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B312913 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA077615) |
| v. | |
| DEMORYIE WATTS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Lisa M. Strassner, Commissioner. Affirmed.

Laura R. Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This case involves a denial of mental health diversion under Penal Code section 1001.36.[1] Appellant Demoryie Watts was charged with attempted carjacking. He requested, and was denied, mental health diversion several times. After the last hearing and denial, appellant pleaded guilty and was sentenced to 18 months in state prison. On appeal, appellant contends that the trial court erred by requiring the consent of the prosecution before granting diversion. Appellant also contends that his due process rights were violated when the trial court refused to allow live testimony in the last diversion hearing by a psychiatrist that had examined appellant.

We agree with appellant that it was error for the trial court to conclude that diversion required consent by the People. But this error was harmless, because the court independently found that appellant did not meet the criteria for diversion. And, the court acted within its discretion in considering the expert's report, but not live testimony, in the pre-trial diversion hearing. Accordingly, we affirm the judgment.

## BACKGROUND

The details of the underlying offense are not relevant to the issues on appeal. In summary, based on the preliminary hearing, appellant was with some other men, he approached the driver's side of a vehicle, struck the driver in a failed attempt to steal the vehicle, then ran away. He was charged with a single count of attempted carjacking, a violation of sections 664 and 215, subdivision (a).

Appellant made three initial requests for his case to be transferred (i.e., diverted) to mental health court under section 1001.36: on February 19, 2020, September 30, 2020, and

---

[1] Undesignated statutory references are to the Penal Code.

2

February 11, 2021.  All three were rejected.  In denying the third request for diversion without prejudice, the trial court noted that appellant had repeatedly failed to show up for therapy appointments and therefore was not a suitable candidate for mental health treatment.  On March 10, 2021, the court was informed that appellant had agreed to participate in a full-service partnership program for mental health services.  The court agreed to appoint Dr. Nicole Vienna to evaluate appellant for possible diversion.

On May 6, 2021, appellant filed a written petition for diversion pursuant to section 1001.36.  In this fourth request, appellant argued that he qualified for diversion because he met the requirements of section 1001.36, specifically:  (1) appellant had been recently diagnosed by a mental health professional, Dr. Vienna, who opined that appellant was suffering from "Intellectual Disability, Mild, and Unspecified Psychosis, which are DSM-listed disorders"; (2) Dr. Vienna opined that appellant's disorder played a significant role in the offense; (3) appellant had agreed to participate in a treatment plan and waive his right to a speedy trial; and (4) appellant did not pose an unreasonable risk of committing a crime listed under section 1170.18.  The petition included a copy of Dr. Vienna's report reflecting her opinion that appellant was a suitable candidate for diversion.

On May 10, 2021, the People filed a written opposition to appellant's petition.  The People argued that appellant had failed to show that his disorder played a significant role in the offense.  Specifically, Dr. Vienna opined that the charged offense was related to appellant's intellectual ability because it is difficult for appellant to say "no" or otherwise recognize when he is being manipulated.  The People pointed out that Dr. Vienna reached

her conclusions without reviewing the police report, probation report, preliminary hearing transcript, or any other source of information regarding the offense. Instead, Dr. Vienna relied on appellant's description of the offense, in which appellant denied responsibility for hitting the driver, and blamed it on the other males that were present. The People argued that Dr. Vienna's conclusion was flawed because she did not appear to recognize that appellant had "manipulate[d] the facts to avoid incriminating himself, [which] demonstrates a level of sophistication and comprehension that contradict[s] the doctor's assessment." The prosecution argued that the flaws in Dr. Vienna's report should cause the court to reject her conclusion that appellant would respond to treatment.

The People also argued that appellant's history of failing to appear at mental health treatments indicated that he was not amenable to treatment. Specifically, while out of custody in his pending case, appellant failed to appear at an initial medical evaluation and two therapy appointments. Given these problems with appellant's prima facie case, the prosecution asked that the court deny appellant's motion for diversion.

The court held a hearing on appellant's petition for diversion on May 12, 2021. The court denied the request, citing both the prosecution's opposition to diversion as well as appellant's history of noncompliance with mental health treatment. The trial court clearly expressed its view that diversion was intended to be collaborative, and therefore the consent of the People was required. Appellant argued the statute contained no requirement of prosecutorial consent to diversion. The court went to some lengths to explain that the lack of consent was not the only reason for denying diversion. The court felt

Dr. Vienna's assessment was "rather one-sided based upon her conversations with [appellant]." It found that appellant's diagnosis was not a "significant factor" in the commission of the offense. It cited to his history of failing to attend mental health appointments. It indicated that appellant's mental health case plan was insufficient. The court concluded that for the "reasons" (plural) that it had discussed, it was denying diversion.

## DISCUSSION

### I.     Standard of Review

The court's decision on a motion for diversion is reviewed for an abuse of discretion, and factual findings are reviewed for substantial evidence. (See *People v. Frahs* (2020) 9 Cal.5th 618, 626 [noting that § 1001.36 gives trial courts the discretion to grant pretrial diversion]; *People v. Moine* (2021) 62 Cal.App.5th 440, 447–449 [§ 1001.36 affords the trial court discretion to grant or deny diversion if the defendant meets the statutory eligibility requirements]; *People v. O'Neal* (2021) 64 Cal.App.5th 581, 588.) A trial court "has broad discretion to determine whether a given defendant is a good candidate for mental health diversion." (*People v. Curry* (2021) 62 Cal.App.5th 314, 324.)

### II.    The Trial Court Erred in Finding That Prosecution Consent to Diversion Was Required

Section 1001.36 states that a trial court may grant pretrial diversion if the following six prerequisites are met. First, the court must be "satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders . . . ." (§ 1001.36, subd. (b)(1)(A).) "Evidence of the defendant's mental disorder shall be provided by the defense and shall include a recent diagnosis by a qualified mental health expert. In opining that a

defendant suffers from a qualifying disorder, the qualified mental health expert may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence."  (§ 1001.36, subd. (b)(1)(A).)  Second, the court must be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense."  (§ 1001.36, subd. (b)(1)(B).)  "A court may conclude that a defendant's mental disorder was a significant factor in the commission of the charged offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense, the court concludes that the defendant's mental disorder substantially contributed to the defendant's involvement in the commission of the offense."  (*Ibid.*)

Third, "a qualified mental health expert" must opine that "the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment." (§ 1001.36, subd. (b)(1)(C).)  Fourth, subject to certain exceptions, the defendant must consent to diversion and waive his or her right to a speedy trial.  (§ 1001.36, subd. (b)(1)(D).)  Fifth, the defendant must agree to comply with treatment as a condition of diversion.  (§ 1001.36, subd. (b)(1)(E).)  Finally, the court must be "satisfied that the defendant will not pose an unreasonable risk of danger to public safety . . . if treated in the community." (§ 1001.36, subd. (b)(1)(F).)

6

Appellant correctly points out that nothing in section 1001.36, or in the cases interpreting it, requires that the prosecution acquiesce in a defendant's request for mental health diversion in order for diversion to be granted. The statute requires only that the court *consider* the positions of the defense and the prosecution. (§ 1001.36, subd. (a).) The People concede that prosecutorial consent is not required.

## III.   The Trial Court's Ruling That the People Must Agree to Diversion Was Harmless Error

In light of the court's erroneous belief that prosecutorial consent to diversion was necessary, the question is, did the trial court abdicate its responsibility to independently decide whether it agreed with the People's position that diversion should be denied? If the court also decided for itself whether diversion was appropriate under the statute, regardless of the People's lack of consent, then its ruling about consent was harmless error. (See *People v. Jefferson* (2019) 38 Cal.App.5th 399, 409 [no remand for mental health diversion hearing required where trial court comments indicated the court would not find defendant eligible for diversion].)

Several statements made by the trial court demonstrate that its position that the People needed to consent to diversion was *in addition to* its own determination that the requirements for diversion under section 1001.36 had not been met. First, at the conclusion of the hearing on appellant's motion for diversion, the court stated, "I've heard from both sides. . . . I know the elements of the offense. I do not believe that [appellant's] D.S.M. diagnosis, whether it's developmental disability or schizophrenia, was a sufficient factor in the commission of this attempted carjacking." This is a direct statement that the trial court, not

7

just the prosecutor, had concluded that the requirement under section 1001.36, subdivision (b)(1)(B) had not been met.

Second, immediately after making this statement indicating that the defendant's mental disorder was not a significant factor in the commission of the offense, the court stated, "I *also* do believe that because it's an informal diversion, both sides do need to collaborate and agree." (Italics added.) The purported "need to collaborate" had nothing to do with the first conclusion cited by the court. It is clear the court was giving an *additional* reason why diversion was not warranted, not a reason that was the basis for the court's initial statement that it had concluded the disorder was not a significant factor in the commission of the offense.

Third, in response to appellant's argument that consent of the People was not required, the trial court stated it would "not go along with it unless there's an agreement between both parties, *but I've also indicated additional information as to why I will not grant 1001.36 in this case.*" (Italics added.) This is yet another statement by the trial court that it had decided to deny diversion for multiple reasons, including reasons other than the lack of consent by the People.

Fourth, the court stated that appellant's history of repeatedly failing to show up for therapy treatment[2] was one of the reasons the court denied diversion. The court stated, "Mr. Watts consented to treatment three times in Department A-16, failed each time, and the court is cognizant and aware of the fact that he wants to get out of custody; so, therefore, he agrees –

---

[2]     While appellant was out of custody, he failed to appear at two therapy appointments and an initial medical evaluation arranged by the county's Department of Mental Health.

he will once again agree to consent of treatment, but that *to me* is based upon his history of insufficiently not [*sic*] complying with the terms and conditions that he consented to agreeing to. *The court is not confident* that based on that statement that he would – that he will be successful under 1001.36." (Italics added.) The court explicitly referenced its own lack of confidence that appellant was amenable to treatment in light of his history of non-compliance. Fifth, the court found the case plan was insufficient.

Finally, in summarizing the court's reasons for denying the diversion motion, the court referenced the disorder not being a significant factor in the commission of the offense, and the lack of agreement by the prosecutor, and then said, "For those reasons *and the others that I've indicated plus his history of failing to go to his appointments multiple times* in Department A-16, the motion for [section] 1001.36 is respectfully denied." (Italics added.) This was yet another direct statement by the trial court that multiple reasons justified denial of diversion, and that it was not simply basing its decision on the People's lack of consent.

Since the trial court gave multiple grounds for denying diversion, any one of which was an independently permissible basis for concluding the requirements of section 1001.36 had not been met, it was harmless error for one of the multiple grounds to be invalid. The valid grounds for denying diversion cited by the court reflected an independent assessment by the court and were supported by substantial evidence that brought the court's decision well within its discretion.

## IV. Appellant Did Not Have a Due Process Right to Live Expert Testimony at the Diversion Hearing

Dr. Vienna wrote a report favorable to appellant, concluding that he met the criteria for mental health diversion. The trial court considered and analyzed the report. Appellant's request to also call Dr. Vienna as a live witness was denied. Appellant argues this was a denial of due process.

It is important to focus on the proceeding in which appellant wished to call the witness. It was a *pre-trial* hearing involving a *statutorily created alternative* to criminal prosecution. It was not a trial. Appellant cites to numerous cases involving the due process right to call witnesses *at trial*. He fails to cite any case involving a due process right to live testimony in a pre-trial (or post-trial) hearing analogous to a diversion hearing. (Cf., *Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1070–1071, 1083 [approving statutory limitation on defendant's right to call witnesses in pre-trial preliminary hearings]; *People v. Arbuckle* (1978) 22 Cal.3d 749, 754 [criminal defendant has no constitutional right in post-trial sentencing hearing to present live testimony of person who prepared written probation report].) This is not surprising, since such hearings are often intended to be much more informal than trials.

In this case, the statute *explicitly* states that the hearing is informal, and may be based on purely documentary evidence. Section 1001.36, subdivision (b)(3) states in relevant part: "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. *The hearing on the prima facie showing shall be informal and*

*may proceed on offers of proof, reliable hearsay, and argument of counsel.*  If a prima facie showing is not made, the court may summarily deny the request for diversion."  (Italics added.)

To engraft a right to live testimony onto the statute would contradict the legislative decision to keep the hearing informal. And if saying the hearing *shall* be informal is not clear enough, the legislature lists the normal elements of the hearing (offers of proof, reliable hearsay, and argument).  Live testimony is the opposite of a hearing based on offers of proof and hearsay. In addition, the statute states the court may *summarily* deny diversion, an even further indication that the court is not required to prolong the hearing by granting a request for live testimony.

Appellant argues he was entitled to call Dr. Vienna under the due process clause to respond to the court's (and People's) criticism of her written report.  He cites to no case suggesting that criticism of a written report triggers a due process right to call the report's author.  If that were the rule, the concept of informal hearings would disappear.  Every written report would potentially lead to the need for a parade of witnesses if anyone disputes anything about the report.  One of the main reasons for holding hearings based on written reports is to avoid the time and trouble of hauling experts into court.  Appellant knew exactly what Dr. Vienna had said in her report (which was entirely helpful to appellant), and was given a full opportunity to argue about the criticisms the People raised about her conclusions. Due process (and § 1001.36) required nothing more.

**DISPOSITION**

The trial court's ruling denying mental health diversion was supported by substantial evidence and was within the court's discretion. To the extent the court felt prosecutorial consent was required, this was an alternative ground that constituted harmless error. Appellant was not denied due process by the court considering the expert's written report but denying the request for live testimony. The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**


HARUTUNIAN, J.[*]

We concur:


GRIMES, Acting P. J.


WILEY, J.

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.